Jonathan J. Lewis, Esq. (SBN: 221082)
**J. LEWIS & ASSOCIATES, APLC**
3985 University Avenue, Second Flood
Riverside, CA 92501
Telephone: 951.682.0488
Facsimile: 951.682.0496
Email: jonlewis@jlewislaw.com

Attorneys for Plaintiff / Creditor
HOPE PARKER

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In Re:

EVANDER FRANK KANE,

        Debtor

_____

HOPE PARKER, an individual,

        Creditor / Plaintiff,

v.

EVANDER FRANK KANE an individual,

        Debtor / Defendant.

_____

CHAPTER 7
CASE NO. 21-50028-SLJ

ADV. NO.: 21-50008

**PLAINTIFF HOPE PARKER'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [FILED CONCURRENTLY WITH PLAINTIFF HOPE PARKER'S REQUEST FOR JUDICIAL NOTICE; PLAINTIFF HOPE PARKER'S OBJECTIONS TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE]**

Hearing:
Date: June 15, 2021
Time: 1:30 p.m. Pacific Prevailing Time
Place: Tele/Videoconference

    TO THE HONORABLE STEPHEN L. JOHNSON UNITED STATES BANKRUPTCY JUDGE:

    Plaintiff Hope Parker submits her opposition to the Motion to Dismiss Plaintiff's Complaint brought by Defendant Evander Kane, which hearing has been set for June 15, 2021 at 1:30 p.m. via

a Tele/Videoconference.

Plaintiff's opposition to Defendant's Motion to Dismiss is based upon this notice, the attached memorandum of points and authorities, Plaintiff's Request for Judicial Notice, Plaintiff's Objections to Defendant's Request for Judicial Notice and all pleading, papers and records in this action, and upon such other oral and documentary evidence as may be presented at the hearing of this Motion to Dismiss.

J. LEWIS & ASSOCIATES, APLC

DATED: June 1, 2021         By _____
                                Jonathan J. Lewis, Esq.
                                Attorney for Plaintiff

# TABLE OF CONTENTS

I. Introduction...........................................................1

II. Statement of Facts..................................................1

III. Legal Argument ....................................................3

    A. Parker had made sufficient factual allegations in her Complaint to withstand Kane's Motion to Dismiss her Section 523(a)(2)(A) claim ................................. 3

        1. Kane's misrepresentations, fraudulent omission and deceptive conduct . . 3

        2. Kane knew his statement was false when he made it................... 4

        3. Kane told Parker he would pay her the agreed upon amount to deceive her.5

        4. Parker justifiably relied on Kane's representations ...................5

        5. Parker sustained damages as she relied on Kane's representations ...... 6

    B. Kane's Motion never adequately sets forth any deficiencies in Parker's section 523(a)(2)(A) cause of action ....................................... 6

        1. Parker does lay out the who, what, when, where, why and how in her complaint. ................................................... 7

        2. Parker provided a service to Kane: She terminated their pregnancy ..... 8

        3. Parker pled sufficient facts that Kane's intent was to defraud her and that she justifiably relied on his false representations........................ 8

        4. Parker suffered a loss of her pregnancy as well as did not receive the agreed upon amount, proximately resulting in damages.......................... 9

        5. The parties' agreement is sufficiently clear to allow for enforcement..... 9

        6. The parties' agreement is not in any way volatile of public policy....... 11

    C. Parker has pled sufficient factual allegations for her Section 727 cause of action13

    D. Parker must be granted leave to amend................................ 14

IV. Conclusion ........................................................ 14

Case: 21-05008   Doc# 7   Filed: 06/01/21   Entered: 06/01/21 15:46:02   Page 3 of 20

| | |
|---|---|
| 1 | TABLE OF AUTHORITIES |
| 2 | **Cases** |
| 3 | *Bell Atl. Corp. v. Towmbly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13 ,14 |
| 4 | *Consumer Oil Co. v. Adeed* (*In re Adeeb*), 787 F.2d 1339 (9th Cir. 1986) . . . . . . . . . . . . . . . 13 |
| 5 | *Ersa Grae Corp. v. Fluor Corp.*,1 Cal.App.4th 613 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 |
| 6 | *Forde v. Vernbro*, 218 Cal.App.4th 405 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 |
| 7 | *Grogan v. Garner*, 498 U.S. 279 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11 |
| 8 | *Johnson v. Calvert*, 5 Cal.4th 84 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13 |
| 9 | *In re Anastas*, 94 F.3d 1280 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 |
| 10 | *In re Apte*, 180 B.R. 223 (9th Cir. BAP 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 |
| 11 | *In re Eashai*, 87 F.3d 1082 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 |
| 12 | *In re Hashimi* 104 F.3d 1122 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 |
| 13 | *In L.G. v. F.G.H., R.A.G., and Estate of H.A.G.*, 729 SWR.2d 634 (1987) . . . . . . . . . . . . . . 12 |
| 14 | *Moncada v. West Coast Quartz Corp.*, 221 Cal.App.4th 768 (2013). . . . . . . . . . . . . . . . . . 9, 10 |
| 15 | *Moran v. Harris*, 131 Cal.App.3d 913 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 |
| 16 | *Oney v. Weinberg* (*In re Weinberg*), 410, B.R. 19, 35 (9th Cir. BAP 2009), aff'd 407 Fed Appx. 176 |
| 17 | (9th Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 |
| 18 | *Perry v. Atkinson*, 195 Cal.App.3d 14 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13 |
| 19 | *Sebelius v. Cloer*, 569 U.S. 369 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8 |
| 20 | *Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . 3, 13 |
| 21 | **Statutes** |
| 22 | 11 U.S.C. § 523 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 7, 8 |
| 23 | 11 U.S.C. § 727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 |
| 24 | California Health and Safety Code §123463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 |
| 25 | **Rules** |
| 26 | Bankruptcy Rule 7015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 |
| 27 | Civil Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7 |
| 28 | Civil Rule 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14 |

**Secondary Sources**

Merriman Webster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Hope Parker timely filed an action against Defendant Evander Kane in the Los Angeles Superior Court, Santa Monica Division. The case was assigned to Honorable Elaine Mandel.

In her complaint, Hope Parker ("Parker") among other causes of action, alleged a cause of action against Evander Kane ("Kane") for fraud/misrepresentation. Parker filed her suit on or about October 24, 2018. Kane demurred to the suit, alleging several of the same arguments he makes in the instant motion to dismiss. Judge Mandel overruled the demurrer. The parties engaged in discovery. *See Plaintiff's Request for Judicial Notice.*

Kane then filed a Motion for Summary Judgment. Parker opposed that motion. Based upon Parker's opposition, Kane, through his counsel, continued the hearing on the Motion to March 17, 2021. Kane then filed for Chapter Seven Bankruptcy protection on January 9, 2021, staying the State Court action.

Parker timely filed an Adverse Complaint on April 1, 2021 alleging non-dischargeability pursuant to 11 U.S.C. 523(a)(2) and 727(a)(2-7). Parker was the first creditor to file an adverse action. Since that time, four other creditors have filed adverse actions against Kane, two of which include allegations that Kane's bankruptcy should not be discharged pursuant to section 727(a)(2-7). The Bankruptcy Trustee and the United States Trustee have yet to file a complaint, as each of their time to file a complaint has been extended by stipulation.

In his Motion to Dismiss, Kane fails to address where Parker's complaint is deficiently pled. Instead, Kane attacks Parker's complaint by asking this Court to adjudicate issues of fact raised in the complaint in favor of Kane. For the reasons set forth below, this Court must deny Kane's motion to dismiss.

## II. STATEMENT OF FACTS

A cursory read of Parker's complaint sets for that Kane and she had engaged in sexual relations on several occasions that resulted in pregnancies. At the behest of Kane, Parker terminated the first two pregnancies. However, as doing so took a physical and an emotional toll on Parker,

Kane of his own volition deposited $125,000.00 in Parker's bank account. *Complaint* at ¶¶ 6-9.

In May 2018, the parties engaged in relations that resulted in a third pregnancy. Kane wanted to terminate this third pregnancy. Parker refused, explaining that she did not want to go through the physical and emotional pain of a third termination. Kane pleaded with Parker, telling her that the pregnancy and resulting child would ruin his life, as it would create significant negative impact on his career as professional athlete and as it would cause severe detriment to his personal life. Parker refused. *Complaint* at ¶¶ 10-12.

Over the next few days, Kane offered Parker one million dollars to terminate the pregnancy. Parker refused. Kane continued to plead with Parker that the pregnancy would ruin him and his life. Parker refused. Kane bullied and threatened Parker, Parker continued to refuse. Kane then offered Parker the million dollars again, Parker refused. Kane persisted in convincing Parker to terminate the pregnancy. By June 4, through that persistence, the parties reached an agreement - Kane would pay Parker at least two million dollars (the exact wording was between two and three million) and Parker would terminate the pregnancy. *Complaint* at ¶¶ 13-21.

Having reached a place of mutual assent (which is memorialized in text messages between the parties), Parker went to her Gynecologist and began the termination process. Parker texted Kane proof that she began the procedure. Kane texted Parker that he was working on getting her the agreed upon amount. Over the next nine days, Parker provided Kane the proof he requested that the pregnancy was terminating. In those same text messages, Kane continued to represent to Parker that he was obtaining the agreed upon amount. *Complaint* at ¶¶ 21-25.

On June 13, 2018, Parker let Kane know that the pregnancy was completed terminated. Parker inquired about the status of the Kane obtaining the funds. Kane, for the first time and because he knew the pregnancy was terminated, told Parker that he was not going to pay her. Instead, Kane told Parker to speak to his lawyer. *Complaint* at ¶ 25.

Parker filed suit in Los Angeles Superior Court (Case Number: 18SMCV00095) ), pleading causes of action for breach of contract, fraud, intentional infliction of emotional distress, quantum meruit and promissory estoppel. Kane demurrered to the complaint, alleging that the agreement was not enforceable as it violated public policy (the exact argument Kane makes in this Motion to

| | |
|---|---|
| 1 | Dismiss). On or about June 6, 2019, Judge Elaine Mandel heard Kane's demurrer. Judge Mandel, |
| 2 | after reviewing the moving papers and opposition thereto, overruled the demurrer as to all causes |
| 3 | of action, including fraud. *Complaint* at ¶¶ 26-27; *Plaintiff's Req. for Jud. Not.* 1. |
| 4 | Judge Mandel set the matter for trial in July 2020. However, as the parties were still in the |
| 5 | process of conducting discovery and due to COVID-19, the trial date was taken off calendar. At the |
| 6 | time that Kane filed his bankruptcy petition, there was no trial date. *Plaintiff's Req. for Jud. Not.* 1. |
| 7 | On January 9, 2021, Kane filed his bankruptcy petition. As other parties have sent forth in |
| 8 | their various pleadings, Kane failed to disclose his future earnings. At the meeting of creditors, Kane |
| 9 | failed to explain where all of his earnings have gone. *Complaint* at ¶¶ 40-41. |

## III. LEGAL ARGUMENT

**A. Parker had made sufficient factual allegations in her Complaint to withstand Kane's Motion to Dismiss her Section 523(a)(2)(A) claim.**

Section 523(a)(2)(A) excepts from a debtor's discharge debts resulting from "false pretenses, a false representation, or actual fraud . . . ." For Parker to have Kane's debt to her excepted from discharge based upon fraud, Parker need only establish: (1) misrepresentation, fraudulent omission or deceptive conduct; (2) Kane's knowledge of the falsity or deceptiveness of such representation(s) or omission(s); (3) Kane's intent to deceive; (4) Parker's justifiable reliance; and (5) Damages to Parker proximately caused by her reliance on Kane's representations or conduct. *Oney v. Weinberg* (*In re Weinberg*), 410, B.R. 19, 35 (9th Cir. BAP 2009), aff'd 407 Fed Appx. 176 (9th Cir 2010); *In re Hashimi* 104 F.3d 1122, 1125 (9th Cir. 1997).

As the parties are only at the pleading stage, Parker is only required to assert in her complaint factual allegations sufficient "to raise [her] right to relief beyond a speculative level." *Bell Atl. Corp. v. Towmbly*, 550 U.S. 544, 555 (2007). The Court, in making that determination, "must presume all factual allegations of the complaint to be true and draw all reasonable inferences therefrom in favor of [Parker]." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

**1. Kane's misrepresentations, fraudulent omission and deceptive conduct.**

On or about June 4, 2018, after further discussions, Kane agreed to pay Parker between two million and three million dollars to terminate the pregnancy. Kane stated in a declaration that he

understood that Parker would terminate the pregnancy if he paid her a sum between two million and three million dollars. Kane told Ms. Parker that he would pay her that sum. Kane also texted Parker, stating: "Hope I just said I'm going to do everything I can! You know my situation I'm literally going to be broke after this. So you don't need to worry about me doing everything g (sic) on my end." *Complaint* at ¶ 21.

As Parker began the termination process, Kane told Parker: "I'm going to do everything I can! You know my situation I'm literally going to be broke after this [;]" and "I'm working on it trust me! Just need some time. You'll be good." During that same time, Kane requested that Parker provide him with proof that she was terminating the pregnancy, and she did so. *Complaint* at ¶ 24.

The complaint makes it clear that Kane continually encouraged Parker to move forward with the termination process, never once telling her that he had no intention of honoring the parties' agreement while the process was being completed. However, the very day Parker informed Kane that the pregnancy was terminated is the very day that Kane, for the first time, refused to pay Parker. It is also the first time Kane denied the existence of the parties' agreement. *Complaint* at ¶¶ 22-26.

Kane's representation to Parker that he would pay her at least two million dollars to terminate their pregnancy was false. Parker alleges it was false, as she alleges that Kane never paid that amount, nor any amount. *Complaint* at ¶¶ 22-26; 32-34. Giving Parker the benefit of every inference in her complaint, Parker has sufficiently pled that Kane made a false statement to her.

**2. Kane knew his statement was false when he made it.**

Kane told Parker and agreed with Parker that he would pay her an amount of two million to three million dollars with the intent to deceive Parker into terminating the pregnancy. The fact that he subsequently stated that never agreed to pay Parker an amount of two million to three million dollars shows that he never intended to pay Parker that amount. *Complaint* at ¶ 33.

Kane's statement that he never agreed to pay Parker the agreed amount of two million to three million dollars demonstrates that at the time he made the representations to Parker that he would pay her the amount of two million to three million dollars, Kane knew that he was never going to do so. *Complaint* at ¶ 33.

Kane's subsequent conduct of continually stating that he was working on obtaining the

agreed upon amount, but his failure to obtain that amount shows that he knowingly intended to never pay Parker. The fact that when he learned the pregnancy was terminated, he stopped communicating to Parker that he was working on obtaining the funds, but instead told her to speak to his lawyer also shows that he knew during all relevant times that he was never going to Parker the agreed upon amount of two million to three million dollars. *Complaint* at ¶ 33.

### 3. Kane told Parker he would pay her the agreed upon amount to deceive her.

In assessing intent to defraud, courts are permitted to consider the totality of the circumstances. *In re Anastas*, 94 F.3d 1280, 1286 fn.3 (9th Cir. 1996). Parker's complaint paints a true picture of the circumstances. Kane was desperate to have Parker terminate their pregnancy. *Complaint* at ¶¶ 11-18. When she refused, he offered her a million dollars. *Complaint* at ¶¶ 13, 19. When she refused, he begged and bullied more. *Complaint* at ¶¶ 11-18. When she still refused and with Kane knowing that time was of the essence, Kane was willing to say whatever he needed to cause Parker to terminate the pregnancy. *Complaint* at ¶¶ 11-21. He knew that Parker trusted him, so he agreed to pay her between two and three million dollars, all the while knowing he would never honor that agreement. *Complaint* at ¶ 21. He continued to tell Parker during the next nine days that he was obtaining the funds, while simultaneously making sure she was terminating the pregnancy. *Complaint* at ¶¶ 22-25. Then, when he learned Parker had completed the termination process, he immediately told her he would not pay her, and to speak to his lawyer. *Complaint* at ¶¶ 22-26; 32-34.

However, if that were not enough to show Kane's intent to deceive, Parker alleged in her complaint that: "Defendant was stringing her along by his misrepresentations until such time as he knew that the pregnancy was terminate[,]" and Kane "never intended to pay Ms. Parker that amount." *Complaint* at ¶¶ 32-33. Parker alleged sufficient facts showing Kane's intent to deceive. *See* FRCP 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.")

### 4. Parker justifiably relied on Kane's representations.

"Justifiable" reliance is a mixture of objective and subjective standards, which take into account knowledge and relationship of the parties themselves. *In re Apte,* 180 B.R. 223, 229 (9th Cir. BAP 1995). A person can justifiably rely on a representation even if the falsity of the representation

could have been ascertained upon investigation. Even negligence in failing to discover an intentional misrepresentation does not defeat justifiable reliance. *In re Eashai*, 87 F.3d 1082, 1090 (9th Cir. 1996).

Parker justifiably relied on the promises and representations that Kane was going to pay her an amount of two million to three million dollars. Kane, who had earned more than thirty million dollars up until that point had just signed a contract guaranteeing him future earnings of forty nine-million dollars. *Complaint* at ¶ 35. Kane had voluntarily wired $125,000.00 into Parker's account after she terminated the second pregnancy. *Complaint* at ¶ 35. Kane also told Parker that the pregnancy would "ruin his career," which at that time had a value of upwards of forty nine-million dollars. *Complaint* at ¶ 35.

### 5. Parker sustained damages as she relied on Kane's representations.

Parker terminated her pregnancy as Kane fraudulently agreed to pay her an amount between two million and three million dollars. Parker never received the agreed upon amount, despite performing her part of the agreement. The lack of Kane paying what he owed Parker for a service he procured by fraud, actually and proximately caused Parker to sustain damages. *Complaint* at ¶ 36. Kane's fraudulent conduct permits Parker to seek a determination by this Court that Kane's debt is non-dischargeable.

The Bankruptcy Act only allows the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Kane is anything but that. He intentionally lied for his own selfish interests, compelling Parker to undergo the physical and mental pain of an abortion. Then once he got what he wanted, he refused to honor his agreement. Kane did so, knowing all along that he was never going to pay Parker anything, but instead his plan was to lie to her and then when she trusted him, run out the clock until the termination was complete. Parker has pled in her Complaint sufficient factual allegations to substantiate all the necessary elements for fraud under section 523(a)(2)(A). As such, this Court must deny Kane's Motion to Dismiss.

**B. Kane's Motion never adequately sets forth any deficiencies in Parker's section 523(a)(2)(A) cause of action.**

Kane's motion never sets forth how Parker failed to state a claim under section 523(a)(2)(A) nor how Parker's complaint failed to comply with FRCP 9(b). Instead, Kane just throws every argument he can think of against the wall in hopes that something will stick.

Kane argues that Parker did not lay out the who, what, when, where, why and how. Kane argues that Parker's act of terminating their pregnancy was not a "service" to him. Kane argues he intended to pay Parker. Kane argues that Parker was not justified in believing Kane intended to pay her. Kane argues that Parker sustained no damages. Kane argues that the consideration was too vague. Kane argues that the agreement violated public policy. Each of those arguments is misplaced, as it is clear Parker set forth facts in her complaint to address each element of 523(a)(2)(A). Notwithstanding, immediately below, Parker addresses each of those baseless arguments.

**1. Parker does lay out the who, what, when, where, why and how in her complaint.**

Kane initially claims that this Court must grant his motion as Parker fails to set forth the who, what, when, where, why and how. *Motion* at p. 3, ln. 18-20. Parker's complaint, however, does set forth factual allegations that satisfy the who, what, when, where, why and how.

* The "who" is Parker and Kane. *Complaint* at ¶¶ 3-37.

* The "what" is Kane fraudulently agreeing to pay Parker at least two million dollars and up to three million dollars if she would terminate their pregnancy, which he knew he was never going to do. *Complaint* at ¶¶ 19-22.

* The "when" is May 13, 2018 (the parties had relations resulting in pregnancy), May 31, 2018 (the day Parker informed Kane she was pregnant) and discussions from May 31, 2018 through June 4, 2018, with Kane making false statements to Parker on June 4, 2018. *Complaint* at ¶¶ 10-21. The "when" is also June 4, 2018 (the day Parker began the termination process), June 4, 2018 through June 13, 2018 (Kane's continual false assurances to Parker he was procuring the agreed upon funds while the pregnancy was terminating) and June 13, 2018 (the day Kane learned that the pregnancy had terminated and then refused to pay Parker, but instead directed her to his lawyer). *Complaint* at ¶¶ 22-25.

\*   The "where" is Los Angeles County, California. *Complaint* at ¶ 3.

\*   The "why" is that Kane needed Parker to terminate this third pregnancy as he believed it would ruin his life, both personal and professional. *Complaint* at ¶¶ 12-21. The "why is also that when Parker refused to terminate the pregnancy, Kane offered Parker at least two million dollars and up to three million dollars if she would terminate their pregnancy to achieve his self-serving ends. *Complaint* at ¶¶ 21-25.

\*   The "how" is conversations between Parker and Kane via telephone and text (*Complaint* at ¶ 15), which resulted in Parker terminating her pregnancy via a medical procedure. *Complaint* at ¶¶ 23-25.

**2. Parker provided a service to Kane: She terminated their pregnancy.**

To determine what constitutes "services" for purposes of section 523(a)(2)(A), this Court must look to the plain meaning of the word. *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) ("[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.") Merriam Webster defines "serve" as "to furnish or supply with something needed or desired." "Service" is the action of providing the needed/desired thing.

Parker alleges that Kane desired that she terminate her pregnancy. Kane stated that he was worried about the effect of the pregnancy on his career and personal relationships. The Complaint sets forth facts showing Kane desired and in his mind, needed Parker to terminate the pregnancy.

Parker then furnished what Mr. Kane service he needed/desired, as she then had the pregnancy terminated. Kane's argument that he received no "service" is simply silly and must fail.

**3. Parker pled sufficient facts that Kane's intent was to defraud her and that she justifiably relied on his false representations.**

Parker in her Complaint set forth sufficient factual allegations that Kane intended to deceive her and that she justifiably relied on that deception. Notwithstanding, Kane argues that he possessed the intent to pay Parker to terminate the pregnancy. *Motion* at p. 5, ln. 8-9. Kane, in the very next section of his motion makes a complete 180 degree turn, as he argues that Parker's reliance on his statement that he intended to pay her was unjustified. *Motion* at p. 6, ln. 1, 8-9. It is disingenuous for Kane to argue that Parker could not have justifiably relied on his intent to pay her while arguing

out of the other side of his mouth that he intended to pay her.

**4. Parker suffered a loss of her pregnancy as well as did not receive the agreed upon amount, proximately resulting in damages.**

Based on her justifiable reliance on Kane's false statements, Parker gave up a pregnancy and had to deal with the physical and emotional consequences thereof. At the time Kane insisted that Parker terminate their pregnancy, Kane understood all too well the detrimental effect that request would have Parker. *Complaint* at ¶ 12 ("Plaintiff stated that she did not want to have an abortion due to the medical risks" and "I knew the sooner Plaintiff had the abortion . . . the less likely Plaintiff would suffer complications . . . , which I knew was a concern to Plaintiff.)" Immediately after Parker gave up the pregnancy, Kane refused to pay her the agreed upon amount. As a result of Kane's fraud, Parker suffered damages. Kane, however, incredibly argues that Parker suffered no loss.

**5. The parties' agreement is sufficiently clear to allow for enforcement.**

Kane argues that based on California law, the Court could not hold Kane to the contract price he procured by fraud as it is just too uncertain and indefinite to enforce. Kane is simply wrong as California law and common sense make it clear that the range of at least two million dollars but not to exceed three million is not too uncertain nor indefinite.

*Moncada v. West Coast Quartz Corp.*, 221 Cal.App.4th 768 (2013) is exactly on point. In *Moncada*, the defendant West Coast was a business that was going to be sold during the following decade. The owners of West Coast were worried that if too many employees left before the West Coast was sold, it would sell for a much lower price. To keep employees, West Coast told employees that if they stayed until the sale was complete, West Coast would give each employee sufficient funds for that employee to retire. The three plaintiffs decided to stay. *Id.* at 772.

During the next five (5) years, West Coast continued to reiterate its promise to pay sufficient funds for the plaintiffs to retire once the sale occurred. When the sale did occur five (5) years later for slightly more thirty million dollars, West Coast, having got what it wanted, took all the money and refused to pay the plaintiffs. Plaintiffs sued for breach of contract. West Coast countered that the contract was too uncertain and indefinite as to West Coast's promised consideration: an amount "sufficient for [each plaintiff] to retire." *Id.* at 772.

*Moncada* held that: "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id*. at 777. "In considering expressions of agreement, the court must not hold the parties to some impossible, or ideal, or unusual standard. It must take language as it is and people as they are. All agreements have some degree of indefiniteness and some degree of uncertainty . . . ." *Ibid.* Moreover, "'[t]he law leans against the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained.'" *Ibid.* *Moncada* found the contract to be valid, as plaintiffs would be able to present evidence of what each required to retire. *Ibid*.

*Moncada* did not create new law. It simply reiterated the well-settled policy: "'that [the law] does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.' [Citation] This . . . extend[s] to a failure to state the price of a purchase.'" *Forde v. Vernbro,* 218 Cal.App.4th 405, 407 (1963) "Stated otherwise, [a] contract will be enforced if it is possible to reach a fair and just result even if, in the process, the court is required to fill in some gaps." *Ersa Grae Corp. v. Fluor Corp.* 1 Cal.App.4th 613, 623 (1991)

If a contract term of an amount "sufficient for [each plaintiff] to retire" is sufficiently clear to allow for a remedy, then surely Parker's and Kane's agreed price of two million to three million dollars is sufficient for this Court to provide a remedy.

The following common sense examples further make the point. Let's say Kane had been at a restaurant and ordered "the special" despite Kane knowing he had no intention of paying for it. Let's also say that despite his fraudulent intent, when the server told Kane that she was not sure of the exact price, but that it was between $20 and $30, Kane then ordered and ate it. If the restaurant filed an adverse complaint to have Kane's debt for the fraudulently obtained meal deemed non-dischargeable, would Kane be entitled to a free meal because he and the restaurant did not agree on an exact amount.

Another example: If Parker and Kane had agreed to a price of two million dollars, then there would be no dispute, and everyone would agree that the value of Parker terminating the pregnancy

1  was two million dollars. But because the agreed upon range no less than two million no more than
2  three million, now the same act has no value. Such a contention is simply absurd.
3       If a trier of fact determined that Kane procured his contract with Parker by fraud, and then
4  awarded Parker 2.2 million dollars, would that in any way be unfair to Kane or Parker? Surely the
5  answer is "no" as the parties agreed to an amount between two million and three million dollars.

### 6. The parties' agreement is not in any way volatile of public policy.

Kane makes the same argument that he already made to Judge Mandel of the Los Angeles Superior Court: That his agreement with Parker cannot be enforced as it violates public policy. Judge Mandel, after reviewing the parties briefs and California law, determined that the agreement did not violate public policy and allowed Parker's suit to go forward, including her cause of action for fraud. *Complaint* at ¶¶ 26-27; *Plaintiff's Request for Judicial Notice* 1 through 5. As that State Court already resolved this issue against Kane, Kane's public policy argument is barred by collateral estoppel. *Grogan v. Garner*, 498 U.S. 279, 284 (1991).

However, even if collateral estoppel did not bar Kane from making the same public policy argument, Kane fails to show how his agreement was volatile of public policy. "Before labeling a contract as being contrary to public policy, courts must carefully inquire into the nature of the conduct, the extent of public harm which may be involved, and the moral quality of the conduct of the parties in light of the prevailing standards of the community." *Moran v. Harris*, 131 Cal.App.3d 913, 920 (1982).

*Health and Safety Code* section 123464(b) states: "Every woman has the fundamental right to choose to bear a child or to choose and to obtain an abortion . . . ." Section 123464(c) states: "The state shall not deny or interfere with a woman's fundamental right to choose to bear a child or to choose to obtain an abortion, except as specifically permitted by this article."

As women possess the legal right to terminate a pregnancy, and as "public policy requires and encourages the making of contracts . . . upon all valid and lawful considerations . . . allow[ing] the parties the widest latitude[,]" strong public policy favors the subject contract. *Moran v. Harris*, 131 Cal.App.3d 913, 919 (1982). A court can only invalidate a contract on public policy grounds when "it is entirely plain that a contract is violative of sound public policy." *Ibid.*

At issue is whether this Court should: (1) Hold Kane to the terms of a contract he procured by fraud, and into which he freely entered and benefitted; or (2) Hold that a woman cannot, for valid consideration, exercise her right to terminate a pregnancy. The California Supreme Court has found that public policy supports the proposition that a woman can contract to carry to term a pregnancy for consideration. *Johnson v. Calvert*, 5 Cal.4th 84, 96-97 (1993) Thus, if a woman has the right to accept consideration to carry a pregnancy, surely that same woman has the right to terminate a pregnancy for consideration.[1]

To further his erroneous "public policy" argument, Kane misconstrues the holding in *Perry v. Atkinson*, 195 Cal.App.3d 14 (1987). *Perry* addressed a situation where two people who were engaged in a sexual relationship were discussing the timing of having a child together. As a result of the relations, Perry became pregnant. Atkinson did not want Perry to have the child. Atkinson told Perry that although he would like to have her child, that he wanted to postpone doing so for a year. Perry then agreed to and did abort the pregnancy, as the plan was that Atkinson would impregnate her the following year. When the following year came, Atkinson changed his mind. Perry then sued him for fraud, claiming he never intended to get her pregnant in the future. *Id.* at 16.

The appellate court set forth that the issue on appeal was: "whether [Plaintiff] has a cause of action for fraudulent breach of a promise to impregnate" (*Id.* at 18) and "[Plaintiff] seeks judicial enforcement, by way of damages, of a promise to impregnate." *Id.* at 21. *Perry* did not address whether an abortion as consideration violates the sutures of public policy. Instead, *Perry* only focused on the narrow issue of whether the court should fashion a remedy in tort for failing to impregnate after a promise was made to do so.

What is instructive about *Perry* is what the *Perry* Court did not say. The *Perry* Court, despite that fact that plaintiff alleged that defendant's promise caused her to choose to have an abortion, did not find that the defendant's promise was void because it resulted in plaintiff having an abortion. Instead, *Perry* solely focused on a promise to impregnate, and found that such a promise to impregnate could not be enforced in tort. *Perry* never addressed nor held that an abortion as

---

[1] At lease on other Court has held that abortion is valid consideration in contract, whereas no court has held that it is not. *See In L.G. v. F.G.H., R.A.G., and Estate of H.A.G.*, 729 SWR.2d 634 (1987) (attached to *Plaintiff's Request for Judicial Notice* 4).

consideration for a contract is against public policy.[2]

By making his public policy argument, Kane attempts to employ the reasoning that men should be able to make false promises to women to convince them to terminate their pregnancies, but that women should have no legal recourse if and when the man welches on his agreement. Kane's argument "carries overtones of the reasoning that for centuries prevented women from attaining equal economic rights and professional status under the law." *Johnson v. Calvert*, 5 Cal.4th 84 97 (1993) Kane's public policy argument is both incorrect and deficient. His motion must be must be denied.[3]

### C. Parker has pled sufficient factual allegations for her Section 727 cause of action.

To sufficiently state a claim for relief and survive a motion to dismiss, the pleading "does not need detailed factual allegations" but only "factual allegations . . . [that] raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*").

Kane sets forth in his Motion that he understands that Parker is seeking relief for his failure to: (1) Disclose all of his earnings; and (2) Adequately explain where all of his money has gone. *Motion* at pg. 9, ln. 10-12. Kane goes onto show his understanding that Parker is seeking relief for fraudulent concealment (§727(a)(4)(A)), false statement under oath (§727(a)(2)(A-B)) and failure to explain loss of asset or insolvency (§727(a)(5)). *Motion* at pg. 9, ln. 12-15. Thus, as Kane understands the allegations in the complaint, then surely the allegations are pled sufficiently to meet the minimal level set forth in *Twombly*, especially when the allegations are to be liberally construed in favor of Parker. *Consumer Oil Co. v. Adeed (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986).

As Parker has met her pleadings burden under *Twombly*, Kane instead resorts to the impermissibly arguing that the facts set forth in Parker's complaint are not true. However, the problem for Kane is that this Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of [Parker] the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)

---

[2] Kane made the same exact argument in his demurrer. Judge Mandel of the Los Angeles Superior Court overruled the demurrer. Plaintiff's Request for Judicial Notice contains all briefing on that issue.

[3] Kane cherry picks a quote from *Perry* and takes it out of context in his brief. *See Motion* at p. 8, ln. 5-7. The quote's reference to "procreative decisions" is not addressing abortion, but instead is addressing a promise to impregnate. Perry never held that a promise of money in exchange for an abortion is against public policy.

First, Kane asks this Court to find that he "described all of his earnings, including anticipated future earnings in great detail." *Motion* at pg. 10, ln. 7-8. Next, he asks this Court to make a factual finding that he "has sufficiently explained his expenditures and insolvency." *Motion* at pg. 10, ln. 12. Kane also asks this Court to rule that he has provided the Chapter 7 Trustee and U.S. Trustee with requested documents and has adequately disclosed his assets, liabilities and expenditures. *Motion* at pg. 10, ln. 13-14. Finally, Kane asks this Court at the pleading stage to find that he "had honestly disclosed all material facts to the best of his ability, and any alleged failure to disclose is justified and immaterial." *Motion* at pg. 10, ln. 17-19.

The reason Kane seeks those "findings" is that without them, Parker had pled sufficient allegations to withstand his motion to dismiss. This Court must deny Kane's request to dismiss Parker's second cause of action.

**D. Parker must be granted leave to amend.**

Parker pled sufficient allegations to withstand Kane's motion to dismiss. However, if for any reason this Court believes that Parker's complaint is lacking, Parker must be given leave to amend. FRCP 15(a)(2) (incorporated by Bankruptcy Rule 7015).

**IV. CONCLUSION**

Parker has stated sufficient factual allegations to meet the pleading standard in *Twombly*. This Court must deny Kane's motion. However, if for any reason this Court grant's Kane's motion, Parker must be give leave to amend, as she has never as of yet amended her complaint.

Respectfully submitted.

J. LEWIS & ASSOCIATES, APLC

DATED: June 1, 2021        By _____
                              Jonathan J. Lewis, Esq.
                              Attorney for Plaintiff
                              Hope Parker

## CERTIFICATE OF SERVICE

Parker v. Kane
21-50008-SLJ

**STATE OF CALIFORNIA, COUNTY OF RIVERSIDE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Riverside, State of California. My business address is 3985 University Avenue, Second Floor, Riverside, CA 92501.

On June 1, 202, I served true copies of the following document(s) described as **PLAINTIFF HOPE PARKER'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** on interested parties in this action as follows:

BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction service was made.

Executed this June 1, 2021, at Riverside, California

Rosie Salas