Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:   (415) 421-2624
Fax:   (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Evander Frank Kane,
Debtor and Defendant.

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br><br>     Debtor. | Case No. 21-50028-SLJ<br>Chapter 7 |
| HOPE PARKER,<br><br>     Plaintiff,<br><br>    v.<br><br>EVANDER FRANK KANE,<br><br>     Debtor and Defendant. | Adv. Proc. No. 21-5008<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT; RESPONSE TO JUDICIAL NOTICE ISSUES**[1]<br><br><u>Hearing:</u><br>Date:   June 15, 2021<br>Time:   1:30 p.m. Pacific Prevailing Time<br>Place:   Tele/Videoconference<br><br>**Remote appearances only.**<br><br>*Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic.* |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Civil Rule" references are to the Federal Rules of Civil Procedure, "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, and "ECF" references are to the docket in this proceeding.

REPLY IN SUPPORT OF MOTION TO DISMISS; RESPONSE TO JUDICIAL NOTICE ISSUES        1

# I.   INTRODUCTION

Evander Frank Kane ("Kane"), the debtor in the above-captioned Chapter 7 bankruptcy case and defendant in this adversary proceeding, submits this reply in support of his motion to dismiss (the "Motion," referring to the supporting memorandum of points and authorities when cited) the adversary complaint (the "Complaint") filed by Hope Parker ("Parker") on April 1, 2021. ECF 1 (Complaint); ECF 4 (Motion). This reply also responds to Parker's objection to Kane's request for judicial notice, ECF 8, as well as her own request for judicial notice, ECF 9.

# II.   ARGUMENT

### A.  Adjudication of the Purported Agreement to Abort Is Contrary to Public Policy

The purported agreement to abort is of such an intensely personal nature that California courts have placed adjudication of such matters outside the realm of adjudication. *Perry v. Atkinson*, 195 Cal. App. 3d 14 (1987); *Stephen K. v. Roni L.*, 105 Cal. App. 3d 640 (1980).

Parker's right to obtain an abortion does not convert such matter into one that is within the Court's purview. Parker argues that she has a right to obtain an abortion under California Health and Safety Code § 123464(b)–(c). She then connects her right to obtain an abortion to the case of *Moran v. Harris*, 131 Cal. App. 3d 913 (1982), in which the court held that attorney referral fee agreements were not contrary to public policy and were therefore enforceable. Parker seems to argue that, because attorney referral fee agreements do not plainly violate public policy, and because she has a legal right to obtain an abortion, the Court should adjudicate the purported agreement for Parker to obtain an abortion in exchange for payment from Kane.

Parker's argument, however, makes no distinction between a breach of contract claim and other types of claims.  Her argument is directly contradicted by California case law holding that representations (even intentional misrepresentations) concerning reproductive decisions are not subject to tort liability. In *Perry v. Atkinson*, the court held that even though Atkinson deliberately made misrepresentations to induce Perry to obtain an abortion, no cause of action existed for fraud. 195 Cal. App. 3d at 19, 21. The court held it could not intervene due to the intensely private nature of the matter. *Id.* at 19. The court was clear that "[t]ort liability cannot

REPLY IN SUPPORT OF MOTION TO DISMISS; RESPONSE TO JUDICIAL NOTICE ISSUES     2

apply to the choice, *however motivated*, of whether to conceive or bear a child," even if that motivation came from intentional misrepresentations. *Id.* (emphasis added).

The same holds true in the reverse scenario. In *Stephen K. v. Roni L.*, Stephen alleged that Roni falsely represented that she was taking birth control pills and, in reliance on that representation, he engaged in sexual relations with her resulting in the birth of a child he did not want. *Stephen K. v. Roni L.*, 105 Cal. App. 3d at 641–42. The court held that Roni's misrepresentations were not actionable, reasoning that "although Roni may have lied and betrayed the personal confidence reposed in her by Stephen, the circumstances and the highly intimate nature of the relationship wherein the false representations may have occurred, are such that a court should not define any standard of conduct therefor." *Id.* at 643. The court declined to "supervise the promises made between two consenting adults as to the circumstances of their private sexual conduct" because that would "encourage unwarranted governmental intrusion into matters affecting the individual's right to privacy." *Id.* at 644–45.

Kane's alleged representations to Parker, made within the confines of an intensely private, consensual, sexual relationship, are outside of the realm of adjudication under California case law. Adjudication would require examination of, among other things, Parker's sexual conduct and medical history in the weeks prior to becoming pregnant, ultimately relying on proof of paternity which could not rise above a speculative level. *See* ECF 4-3 at 7–8, 16–19. This matter is precisely within the ambit of *Perry v. Atkinson* and *Stephen K. v. Roni L.*, and as such, any alleged misrepresentations made by Kane cannot be the subject of a cause of action grounded in fraud or deceit.

B. Collateral Estoppel Does Not Apply

Parker asserts that the state court denied Kane's argument that the alleged agreement cannot be enforced on public policy grounds, collaterally estopping him from raising the same argument here.

For collateral estoppel to apply, five factors must be met: (1) the issue sought to be precluded "must be identical to that decided in a former proceeding"; (2) the issue must have been "actually litigated" in the former proceeding; (3) the issue must have been "necessarily

decided" in the former proceeding; (4) the decision in the former proceeding must be "final and on the merits"; and (5) the party against whom preclusion is sought must be "the same as, or in privity with," the party to the former proceeding. *Lucido v. Superior Court of Mendocino Cty.*, 795 P.2d 1223, 1225 (Cal. 1990) (citations omitted). The party asserting collateral estoppel bears the burden of establishing these requirements. *Id.*

The only indication of the state court's decision is found on a case summary list of proceedings held in the state court lawsuit, which is presented in Parker's request for judicial notice supporting her opposition to Kane's Motion. *See* ECF 9-1. The entry is:

> **06/06/2019** at 8:30 AM in Department P
> Hearing on Demurrer – with Motion to Strike (CCP 430.10) – Held – Motion Denied

ECF 9-1 at 6 (entry marked with handwritten asterisk).[2] However, this decision is not part of the Complaint or relied upon in the Complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Furthermore, Parker has argued that state court documents are not subject to judicial notice. *See* ECF 8 (Parker's objection to Kane's request for judicial notice); Part III, *infra*.

Parker did not provide a copy of the state court's decision, and there is nothing upon which the Court can base a consideration of the elements collateral estoppel. Furthermore, a denial of a motion to dismiss cannot satisfy the finality requirement of collateral estoppel because, rather than finally disposing of the matter, it expressly leaves it open. *See Doran v. Magan*, 76 Cal. App. 4th 1287, 1293 (1999) (discussing finality in context of appealability). In any event, the case is still ongoing and no final judgment has been entered, so there is no final decision for collateral estoppel purposes. Parker has not, and cannot, carry her burden of establishing that the requirements of collateral estoppel are met, and so the principal does not apply.[3]

---

[2] *See also* Complaint at ¶ 27 ("Defendant demurred to the complaint, alleging that the agreement was not enforceable as it violated public policy. . . . Judge Mandel . . . overruled the demurrer.").

[3] Though not argued by Parker, it is worth mentioning that the law of the case doctrine also does not apply. That doctrine states that "the mandate of an appeals court precludes the

C. Parker's § 523(a)(2)(A) Cause of Action Should Be Dismissed

As set forth in Kane's Motion, to sustain a prima facie case for promissory fraud, a plaintiff must allege that (1) the defendant made a representation; (2) at the time of the representation, the defendant knew it was false; (3) the defendant made the representation with the intent and purpose of deceiving the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the representation proximately caused plaintiff's loss or damage. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997). This reply expands upon the Motion's discussion of the first, second, third, and fifth elements.

As to the first element, the Complaint does not adequately allege that Kane represented he would pay $2–3 million. Upon close reading, the Complaint alleges that Kane offered $1 million, which she refused and demanded more. Complaint at ¶¶ 13, 19. She alleges Kane later said he would "take care of [her]" and "pay for any future issues to get pregnant [if] you have them." *Id.* at ¶ 19. Despite Parker's assertion that Kane agreed to pay $2–3 million, the actual alleged facts are only that (1) Kane "understood that Ms. Parker would terminate the pregnancy if Defendant paid her a sum between two million and three million dollars," and (2) Kane texted her, "Hope I just said I'm going to do everything I can! You know my situation I'm literally going to be broke after this. So you don't need to worry about me doing everything . . . on my end." Complaint at ¶ 21. Despite having records of their communications, Parker does not produce any statement whereby Kane actually agreed to pay her $2–3 million.

An understanding that Parker would accept $2–3 million does not equate to a representation to pay that amount. Furthermore, a statement to "do everything I can" lacks the required specificity to create a binding agreement. *See Pac. Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 309 (2014); *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 797 (1998). Such statement is distinguishable from that in the case relied upon by Parker, *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768 (2013). In that case, the defendant promised its

---

[lower] court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal." *Askins v. United States Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). *See also People v. Barragan*, 32 Cal. 4th 236, 246 (2004). As there is no appeal, the doctrine has no application.

REPLY IN SUPPORT OF MOTION TO DISMISS; RESPONSE TO JUDICIAL NOTICE ISSUES      5

employees that, if they continued to work until the company sold, they would be paid bonuses sufficient for them to retire. *Id.* at 777. The company reneged on its promise, and the employees sued. *Id.* at 772. The court rejected the defendant's argument, made on a motion to dismiss, that the promise was so vague as to be unenforceable. *Id.* at 778–79. The court reasoned that the "retirement amounts are not vague or indefinite; rather, they are readily determined using standard formulae and actuarial tables." *Id.* at 778. However, a commitment to "do everything I can" is based upon numerous uncertainties. There are no standard formulas or actuarial tables that provide what "everything I can" amounts to, leaving a finder of fact without any sensible standard upon which to base its consideration. Even if "everything I can" provided a sensible standard, it appears that Kane was not able to do anything—his statement that "You know my situation I'm literally going to be broke after this" appears to have become true, as evidenced by his pending bankruptcy case.

The second and third elements are that, at the time of the representation, the defendant knew it was false, and that the defendant made the representation with the intent and purpose of deceiving the plaintiff. Given Kane's lengthy back-and-forth discussions with Parker, it is speculative and implausible to assert that Kane did not intend to provide some kind of assistance to Parker. It appears from those discussions that Parker demanded $2–3 million and that Kane offered far less (described by Kane as "some amount," Complaint at ¶ 12, 14; perhaps including payment for any future pregnancy complications, *id.* at ¶ 19), and that the two never reached an agreement. It does not appear from their discussions, as alleged by Parker, that Kane ever acted with deceptive intent.

As to the fifth element, Parker has not adequately alleged that she was damaged by obtaining an abortion. Assuming for the sake of argument that Parker's procurement of an abortion constitutes "services" under § 523(a)(2)(A), then the value of that service must be considered. Parker's own Complaint shows the value of the service to be zero, as she had performed the same service twice before for free. Parker is clear that Kane's gift of $125,000 following her second abortion was not compensation, but was a gift made "of his own volition" and that Parker "had never asked for any money." Complaint at ¶ 9. And, as noted directly

REPLY IN SUPPORT OF MOTION TO DISMISS; RESPONSE TO JUDICIAL NOTICE ISSUES     6

above, contract damages are not available because the parties never agreed to a specified payment. Furthermore, as noted in Part II.A, *supra*, damages should not be awarded based on purported promises made within the context of a private, consensual, sexual relationship.

Parker has not adequately alleged that Kane represented he would pay her $2–3 million, nor has she adequately alleged that there was ever a valid and enforceable agreement between them. Parker's allegations that Kane knew the falsity of any representation, or that he made any representation with the intent and purpose of deceiving Parker, are implausible and speculative. Furthermore, Parker has not sufficiently alleged that she was damaged, or that those damages were proximately caused by Kane's conduct. As such, her § 523(a)(2)(A) cause of action should be dismissed.

## D. Parker's § 727 Causes of Action Should Be Dismissed

Parker's Complaint asserts, without any factual support, that Kane should be denied a discharge pursuant to § 727(a)(2)–(7).[4] It does not separately state or analyze any of the six subsections under which is seeks relief. The Complaint lacks nonconclusory factual content, and reasonable inferences from that content, plausibly suggesting that Kane should be denied a discharge.

Parker argues that Kane "understands" that she was actually moving for relief under § 727(a)(2)(A)–(B), (a)(4)(A), and (a)(5), supposedly demonstrating the sufficiency of the pleading. However, Kane's mere guesswork, and Parker's latching onto that guesswork as if it was her original intent, do not transform her Complaint into one that is sufficiently pleaded.

As demonstrated in Kane's Motion, Parker's Complaint does not set forth sufficient factual allegations to sustain causes of action under § 727. She has not alleged that Kane transferred, removed, destroyed, or concealed any property, or that he acted with any actual intent to hinder, delay, or defraud a creditor. *Compare to* § 727(a)(2)(A)–(B). She has not alleged that Kane made any specific false oath or account in his § 341 meetings, in his Schedules or

---

[4] Parker's Complaint also requests that Kane's bankruptcy case be dismissed. Complaint at ¶ 41, Prayer for Relief ¶ 3. She did not join the motion to dismiss filed in Kane's main bankruptcy case, which motion was denied by the Court on May 28, 2021.

Statement of Financial Affairs ("SOFA"), in any declaration filed with the Court, or otherwise, or that he did so knowingly or fraudulently. *Compare to* § 727(a)(4)(A). She has not identified any particular asset that has been lost, and has not set forth any allegations beyond the bare assertion that Kane has failed to explain his losses. *Compare to* § 727(a)(5). In sum, none of Parker's allegations under § 727 state conduct that rises to the level to deny Kane's discharge.

Though not necessary to grant Kane's Motion, the Court may take judicial notice of its own records on a motion to dismiss. *See, e.g., Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). The Court need not accept as true allegations that contradict facts that are subject to judicial notice. *Stamas v. Cty. of Madera*, No. CV F 09-0753 LJO SMS, 2010 U.S. Dist. LEXIS 61757, at *7, 2010 WL 2556560 (E.D. Cal. June 21, 2010) (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). As such, the Court may take notice of Kane's appearance at two § 341 meetings, his disclosures of his assets, liabilities, and expenditures in filings with the Court, and his disclosures concerning his anticipated future income. *See* ECF 1 at 41 (attachment to Schedule I describing Kane's anticipated 2020/2021 income and deductions thereto); ECF 101 at 4, 8 (*Order Denying Motion to Convert*, describing Kane's disclosures regarding his income, including anticipated future income); Motion at 10 (citing extensive amendments to Kane's Schedules and SOFA). These judicially-noticeable facts contradict Parker's unsupported assertions in her Complaint, and the Court need not accept those unsupported assertions as true.

E.  Dismissal Should Be Without Leave to Amend

Parker misstates Civil Rule 15(a)(2), as incorporated by Bankruptcy Rule 7015, to state that she "must" be given leave to amend. In actuality, the rule suggests that the "court should freely give leave when justice so requires." Civil Rule 15(a)(2). As such, leave to amend is not guaranteed, and a court has discretion to deny leave to amend when amendment would be futile. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991). Amendment is futile when no set of facts can be proved which would constitute a valid claim. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Any amendment would be futile, and so leave to amend should be properly denied. Parker cannot state a legally sufficient cause of action for nondischargeability because, in

REPLY IN SUPPORT OF MOTION TO DISMISS; RESPONSE TO JUDICIAL NOTICE ISSUES     8

addition to the reasons set forth in Kane's Motion, (1) she cannot allege that Kane made a representation that he would pay her $2–3 million; (2) she cannot allege that the parties had an agreement to that effect; (3) adjudication of any such agreement would be contrary to public policy under controlling California law; and (4) Parker cannot allege that she suffered damages as a proximate cause of Kane's conduct. She cannot state a legally sufficient cause of action for denial of discharge because she cannot meet the requisite elements and because her conclusory allegations are flatly contradicted by the judicially-noticeable record. Furthermore, Parker's opposition gives no indication as to how she could amend her claims in good faith. For these reasons, dismissal of the Complaint should be with prejudice and without leave to amend.

## III.   RESPONSE TO JUDICIAL NOTICE ISSUES

Kane filed a request for judicial notice in support of his Motion. ECF 4-2. The request attached a copy of a memorandum filed by Kane in the related state court lawsuit. *See* ECF 4-3. The request came with the disclaimer that "Kane's state court motion is included only for context and to indicate that Kane has previously disputed Parker's highly dramatic and upsetting narrative. Because the instant Motion is brought pursuant to Civil Rule 12(b)(6), the state court motion is not meant to present a competing factual narrative." Motion at n.3.

Parker filed an objection to Kane's request for judicial notice on the grounds that the attached document was (1) not subject to judicial notice, (2) irrelevant, (3) opinion, (4) opinion on an ultimate issue, (5) hearsay, and (6) lacked authentication. ECF 8.

Ironically, Parker then sought judicial notice of a number of other state court documents including the state court case summary/docket report and various motions, memoranda, and declarations related to Kane's state court demurrer. ECF 9. The documents comprise Parker's response to Kane's state court demurrer, and no state court orders were included in Parker's request. *See id.* The documents sought to be judicially noticed by Parker, with the possible exception of the state court case summary/docket report, are subject to the same objections that she raised in response to Kane's request for judicial notice. If the Court decides to deny Kane's request for judicial notice, then it should do the same to Parker's request.

## IV. CONCLUSION

For the reasons stated above, Kane respectfully requests that the Bankruptcy Court enter an order that grants Kane's Motion and dismisses Parker's Complaint in its entirety without leave to amend.

Dated June 8, 2021                    FINESTONE HAYES LLP

/s/ Ryan A. Witthans
Ryan A. Witthans
Attorneys for Evander Frank Kane,
Debtor and Defendant.