**Entered on Docket**
**August 19, 2021**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes the order of the Court.
Signed: August 19, 2021

_Stephen Johnson_

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re **EVANDER FRANK KANE**, | Case No. 21-50028 SLJ |
| Debtor. | Chapter 7 |
| **HOPE PARKER**, | Adv. Proc. No. 21-5008 |
| Plaintiff, | |
| v. | |
| **EVANDER FRANK KANE**, Debtor, | |
| Defendant. | |

## ORDER GRANTING MOTION TO DISMISS
## IN PART AND DENYING IN PART

In the above -captioned adversary proceeding, Plaintiff Hope Parker asks me to find nondischargeable under § 523(a)(2)(A)[1] a debt Defendant owes her, arising from Defendant

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy

Case: 21-05008   Doc# 14   Filed: 08/19/21   Entered: 08/19/21 16:17:45   Page 1 of 23

offering her between two and three million dollars to terminate a pregnancy caused by their engaging in sexual relations. Plaintiff also seeks to preclude Defendant from receiving a discharge under a variety of § 727(a) provisions.

Defendant Evander Frank Kane now moves to dismiss the above-captioned adversary complaint, arguing Plaintiff Hope Parker's complaint fails to state a claim on which relief can be granted. Defendant first argues that Plaintiff's § 523(a)(2)(A) fails to plead facts sufficient to state a plausible claim under that provision. Defendant also argues that claim violates the public policy of California because it seeks to enforce an agreement that interferes with a woman's right to choose whether to have or abort a child. Finally, Defendant argues Plaintiff's many § 727(a) claims are too conclusory to proceed.

I conclude that Plaintiff's § 523(a)(2)(A) claim is adequately pled. I also decline to decide the public policy question raised by Defendant now, as California law is equivocal on the enforceability of an agreement like the one alleged here, and a full resolution of this question requires further briefing and, most likely, factual development. Finally, I agree with Defendant that most of Plaintiff's § 727(a) claims must be dismissed, but also decline to dismiss Plaintiff's § 727(a)(5) claim, finding it adequately, if thinly, pled.

## I. BACKGROUND

### A. Plaintiff's Complaint

Plaintiff filed this adversary proceeding on April 1, 2021. ECF 1. According to the complaint, Plaintiff and Defendant, a professional hockey player, saw each other romantically in early 2016 through June 2018. *Id.* ¶ 6. The relationship included sexual relations, during which Defendant was advised by Plaintiff that Plaintiff did not use birth control, as it caused her health problems. *Id.* The parties did not often use contraception. *Id.*

---

Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules. "C.C.P" references refer to the California Code of Civil Procedure.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          2/23

Plaintiff became pregnant in early 2016 because of their relations. *Id.* ¶ 7. "Defendant insisted that [Plaintiff] terminate the pregnancy. [Plaintiff], feeling pressure from Defendant, terminated the pregnancy." *Id.*

The parties again had sexual relations around October 2017, which caused another pregnancy. *Id.* ¶ 8. A blood test confirmed that Defendant was the father. Defendant again pressured Plaintiff to terminate the pregnancy. Plaintiff at first refused, saying the previous abortion caused her physical and mental distress, and she did not want to do so again. She later agreed, after "unrelenting pressure" by Defendant, who said her carrying the child to term would "ruin his life." *Id.*

Plaintiff experienced physical and mental suffering from the second abortion, told Defendant so, and further said she would not have another abortion. Defendant deposited $125,000 into Plaintiff's bank account "of his own volition"; Plaintiff states she had not asked Defendant for money. *Id.* ¶ 9.

The parties again had sexual relations on May 13, 2018, which resulted in a third pregnancy. *Id.* ¶ 10. Plaintiff informed Defendant of the pregnancy on May 31, 2018, and reiterated that she would not undergo a third abortion. *Id.* ¶ 11.

Plaintiff alleges Defendant made various statements about the third pregnancy: that it would have an adverse impact on his career and personal relationships; that he wanted Plaintiff to terminate the pregnancy shortly after Plaintiff told him about it; and that he was open to giving Plaintiff "some amount of money" to accede to a third abortion. *Id.* ¶ 12.

Defendant then offered Plaintiff $1,000,000 to terminate this pregnancy. Plaintiff refused. *Id.* ¶ 13.[2] In the following days, the parties continued to communicate, and Defendant continued to pressure Plaintiff into aborting the third pregnancy. *Id.* ¶¶ 15–18. Defendant also renewed his offer of $1,000,000; Plaintiff, "worn down and scared from being bullied, told Defendant" that $1,000,000 was not enough. *Id.* ¶ 19.

---

[2] Plaintiff alleges Defendant later confirmed in a declaration, under penalty of perjury, that he offered Plaintiff money to terminate the third pregnancy. ECF 1 ¶ 14.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART                    3/23

On June 4, 2018, "Defendant agreed to pay [Plaintiff] between two million and three million dollars to terminate the pregnancy." *Id.* ¶ 21. But, Plaintiff alleges, Defendant had no intention to pay Plaintiff "anywhere near the agreed upon amount." *Id.* ¶ 22. Despite this lack of intention, Defendant "continued to tell [Plaintiff] that he would pay the agreed upon amount." *Id.* Plaintiff began the process of terminating the third pregnancy because of Defendant's representations that they had reached an agreement. *Id.* ¶ 23. As Plaintiff made preparations for terminating the third pregnancy, Defendant sent messages to her continuing to confirm his intent to pay Plaintiff, such as: "I'm going to do everything I can! You know my situation I'm literally going to be broke after this[.]" *Id.* ¶ 24.

Plaintiff sent Defendant a text message of her lab results on June 13, 2018, which confirmed she had completed the termination process. When Plaintiff asked Defendant for an update on the status of his payment to her, Defendant said he would not pay her. Specifically, Defendant stated: "I'll have my lawyer contact you I'm not dealing with this further then." *Id.* ¶ 25.

In response, Defendant filed a civil action in Los Angeles Superior Court,[3] asserting breach of contract, fraud, intentional infliction of emotional distress, quantum meruit and promissory estoppel claims. *Id.* ¶ 26. Plaintiff demurred to the complaint, arguing their agreement was not enforceable because it violated public policy. On June 6, 2019, the State court held a hearing on Defendant's demurrer, overruling it and setting trial for July 2020. The trial date was later vacated because of the COVID-19 pandemic, and on January 9, 2021 Defendant filed the underlying bankruptcy case. *Id.* ¶ 27. Finally, Plaintiff alleges Defendant has failed to disclose his future earnings in the bankruptcy case, and failed to explain where his earnings have gone at the meeting of creditors. *Id.* ¶ 28.

Based on these facts, Plaintiff's complaint requests a determination that Defendant's debt to Plaintiff from this agreement to terminate the third pregnancy is nondischargeable

---

[3] The case number is 18SMCV00095. ECF 1 ¶ 26.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          4/23

1  under § 523(a)(2) as a debt obtained by false pretenses or representations. Alternatively,

2  Plaintiff requests that I deny debtor's discharge under § 727(a)(2)–(7).

3       B.  <u>Defendant's Motion to Dismiss</u>

4       Defendant timely filed this motion to dismiss this adversary proceeding on May 3,

5  2021. ECF 5; *see* ECF 2 (showing the summons was issued on Defendant on April 2, 2021,

6  setting the deadline for a response to the complaint on May 3, 2021). Beginning with the

7  § 523(a)(2) claim, Defendant argues: (1) Plaintiff fails to allege that the third abortion gave

8  Defendant any benefit of money, property, services, or credit; (2) Plaintiff fails to sufficiently

9  allege fraudulent intent, because the facts alleged point to Defendant's declining finances

10  causing him to change his mind, not a lack of intent to pay in the first place; (3) Plaintiff fails

11  to allege facts to show her reliance on Defendant's statements was reasonable; (4) Plaintiff

12  fails to allege how Defendant's statements were the proximate cause of damages to her. As

13  for the § 727 claim, Defendant argues Plaintiff's complaint fails to allege specific facts that

14  show she is entitled to relief under any of the subsections of § 727 she invokes.

15  **II.   LEGAL STANDARD**

16       A defendant may assert, by motion, the defense that the plaintiff has failed to state a

17  claim upon which relief can be granted. Civil Rule 12(b)(6) (incorporated by Bankruptcy

18  Rule 7012). At its heart, a motion to dismiss argues that even if the plaintiff is given every

19  benefit of the doubt, the plaintiff's claim should be dismissed because it is unsupported by

20  factual assertions or is otherwise not legally cognizable.

21       For purposes of evaluating a motion to dismiss, the court "must presume all factual

22  allegations of the complaint to be true and draw all reasonable inferences in favor of the

23  nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Court

24  generally "may not consider any material beyond the pleadings" when deciding a motion to

25  dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.

26  1990). However, the court may consider material submitted with the complaint or relied

27

28  ORDER GRANTING MOTION TO DISMISS
    IN PART AND DENYING IN PART     5/23

upon in it, and may also consider material subject to judicial notice. See *Lee v. City of Los Angeles*, 250 F.3d 668, 688–69 (9th Cir.2001).

To state a claim for relief and survive a motion to dismiss, the pleading "does not need detailed factual allegations," but the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Ninth Circuit has summarized the governing standard as follows: "[F]or a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

When alleging fraud, Civil Rule 9(b), applicable in bankruptcy proceedings under Bankruptcy Rule 7009, requires a party "state with particularity the circumstances constituting fraud[.] Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See In re Craciun*, 2014 WL 2211742, at *5 (B.A.P. 9th Cir. May 28, 2014) (applying Civil Rule 9(b) to § 523(a)(2)(A) claims). A party alleging fraud must "'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted).

When a complaint is dismissed by motion, "[l]eave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. When amendment would be futile, however, dismissal may be ordered with prejudice." *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129, 1135 (N.D. Cal. 2010) (citations omitted).

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART           6/23

# III.    DISCUSSION

### A.   Plaintiff's § 523(a)(2)(A) is Adequately Pled

Defendant first seeks to dismiss Plaintiff's § 523(a)(2)(A) claim. Section 523(a)(2)(A) bars the discharge of any debt for money, to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To succeed on a § 523(a)(2) claim, Plaintiff must show: (1) a representation of fact by the debtor; (2) that was material; (3) that the debtor knew at the time to be false; (4) that the debtor made with the intention of deceiving the creditor; (5) upon which the creditor relied; (6) that the creditor's reliance was reasonable; and (7) that the damage proximately resulted from the misrepresentation. *In re Siriani*, 967 F.2d 302, 304 (9th Cir. 1992) (citation omitted). I conclude Plaintiff's complaint alleges facts sufficient to state a § 523(a)(2)(A) claim, so Defendant's motion must be denied.

#### 1.   *Statements Respecting Financial Condition Must be Excluded*

First, I find that Plaintiff alleges Defendant made certain statements regarding his financial condition, which I cannot consider when deciding a § 523(a)(2)(A) claim. "Congress expressly excluded oral 'statement[s] respecting the debtor's or an insider's financial condition' from § 523(a)(2)(A)'s coverage." *In re Belice*, 461 B.R. 564, 573 (B.A.P. 9th Cir. 2011). A statement respects "a debtor's financial condition if it has a direct relation to or impact on the debtor's overall financial status." *Lamar, Archer, & Cofrin, LLP v. Apling*, 138 S.Ct. 1752, 1761 (2018). This includes statements indicating "whether a debtor is solvent or insolvent, able to repay a given debt or not." *Id.* Plaintiff alleges Defendant made several statements that respect his financial condition, including: "I'm going to do everything I can! You know my situation I'm literally going to be broke after this," ECF 1 ¶ 24; and "I'm working on it trust me! Just need some time. You'll be good[,]" *id.* The context surrounding Defendant making these statements allows me to infer that, when Defendant speaks of his "situation," doing everything he can, and "working on it," he is referring to his financial status. That is, by these statements Defendant meant to assure Plaintiff that he could pay her

1  the amount he promised, and that he was actively working to put together those funds. This

2  means I cannot consider those statements in deciding whether Plaintiff adequately pleads her

3  § 523(a)(2)(A) claim. I therefore exclude them from my analysis below.

4          *2. Plaintiff Adequately Pleads a Material Statement of Fact*

5          Turning to the substantive requirements of § 523(a)(2)(A), Plaintiff alleges that on

6  June 4, 2018 "Defendant agreed to pay [Plaintiff] between two million and three million

7  dollars to terminate the pregnancy," ECF 1 ¶ 21; this is the factual statement at issue.

8  Plaintiff does not explicitly allege that this statement was material. But Plaintiff does state

9  that she did not want to terminate the third pregnancy, *id.* ¶ 17 after being worn down by

10 Defendant's repeated messages pressuring her to abort the third pregnancy, she told

11 Defendant that his original offer of $1,000,000 was not enough, *id.* ¶ 19. Then, after

12 Defendant made the two to three-million-dollar offer, Plaintiff changed course and began

13 the process of terminating the third pregnancy. *Id.* ¶ 23. I can reasonably infer from these

14 facts that Plaintiff was unwilling to terminate the third pregnancy until Defendant offered

15 her two to three million dollars to do so, making that statement a material representation of

16 fact. Plaintiff properly alleges the first two requirements of § 523(a)(2)(A).

17          *3. Plaintiff Adequately Pleads the Statement was False, and Made with Fraudulent Intent*

18         I also find Plaintiff alleges facts that, if true, allow me to infer Defendant's statement

19 was false, and made with fraudulent intent. Defendant argues the facts show he intended to

20 pay her when he made the statement, but his financial situation intervened, causing him to

21 renege. He points to statements he made saying that he was "literally going to be broke

22 after" paying Plaintiff, that he was doing everything he could to put those funds together,

23 and that he was "working on it," it being the funds to repay Plaintiff for agreeing to and

24 carrying out the third abortion. I noted above such statements cannot support a

25 § 523(a)(2)(A) claim as they are oral statements of financial condition.

26         But the complaint here is sufficient, and that is what I use to determine sufficiency in

27 the context of Civil Rule 12(b)(6). It alleges that on June 4, 2018, Defendant agreed to pay

28

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          8/23

Plaintiff two to three million dollars to terminate the third pregnancy. ECF 1 ¶ 21. Then, on June 13, 2018, Plaintiff sent Defendant a text message of her lab results, which confirmed she had terminated the third pregnancy. *Id.* ¶ 25. When Plaintiff requested Defendant update her on the status of her payment, "Defendant, for the first time, told [Plaintiff] he was not going to pay her, stating: 'I'll have my lawyer contact you I'm not dealing with this any further then.'" *Id.*

A plaintiff can show fraudulent intent by either "actual knowledge or reckless indifference to the truth." *In re Grabau*, 151 B.R. 227, 234 (N.D. Cal. 1993) (citing *In re Rubin*, 875 F.2d 755, 759 (9th Cir. 1989)). When "a debtor makes promises of future action which, at the time they were made, he had no intention of fulfilling," the resulting debt may be nondischargeable. *In re Decret*, 2017 WL 4097813, at *2 (Bankr. C.D. Cal. Sept. 13, 2017) (citations and emphasis omitted). But "'if, at the time he makes a promise, the maker honestly intends to keep it but later changes his mind or fails or refuses to carry his expressed intention into effect, there has been no misrepresentation.'" *Id.* at *2 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997)).

It could be true that, between June 4, 2018 and June 13, 2018, Defendant's finances had deteriorated so far that he could no longer honor his agreement. But this is a motion to dismiss, and I must accept Plaintiff's non-conclusory factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Plaintiff asks me to infer Defendant had no intent to pay Plaintiff when he offered her two to three million dollars, pointing to: (1) the short time—just 9 days—between Defendant making that offer, then refusing to honor it; and (2) Defendant's subsequent refusal to pay happening immediately after Plaintiff provided evidence that she had terminated the third pregnancy. The timing of Defendant's about-face allows me to reasonably infer he had no intention of paying Plaintiff when he made his offer; he explicitly refused to pay Plaintiff only when he had evidence that she had completed the abortion, which points to his refusal being linked to the completed abortion, not his financial situation. Alternatively, I also find it reasonable under these facts to infer that, if Defendant's

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          9/23

finances were in fact why he refused to pay Plaintiff, then his promise to pay her was made with reckless indifference to the truth. That is, if Defendant was in such financial distress that he was able to pay Plaintiff on June 4, 2018, then unable to do so just 9 days later, his original promise was so recklessly made that it was substantially the same as having no intent to pay in the first place. Either way, I can infer from the complaint that Plaintiff falsely said he would pay Plaintiff to abort the third pregnancy, and that he did so to deceive Plaintiff into actually undergoing that abortion.

### 4. *Plaintiff Adequately Pleads Justifiable Reliance*

I also find Plaintiff shows she justifiably relied on Defendant's statement. "The general rule is that a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation. In other words, negligence in failing to discover an intentional misrepresentation is no defense. However, a person cannot rely on a representation if he knows that it is false or its falsity is obvious to him. In sum, although a person ordinarily has no duty to investigate the truth of a representation, a person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth." *In re Apte*, 180 B.R. 223, 229 (B.A.P. 9th Cir. 1995) (cleaned up).

Plaintiff alleges she justifiably relied on Defendant's promise to pay her because: (1) Defendant previously wired her $125,000 after she agreed to terminate the second pregnancy; and (2) Defendant stated that the pregnancy would ruin his career, which included a contract he had signed around that time that guaranteed him future earnings of $49,000,000. ECF 1 ¶ 35. Defendant responds that Plaintiff's reliance was unjustifiable because she aborted the third pregnancy before the parties had agreed to a specific amount of money in exchange. In Defendant's view, this means Plaintiff acted under a hopeful expectation of payment that cannot satisfy the justifiable reliance standard. ECF 4-1, p. 9 (citing *Aceves v. United States Bank, N.A.*, 192 Cal. App. 4th 218, 226 (2011)).

"A promise is an indispensable element of the doctrine of promissory estoppel. The cases are uniform in holding that this doctrine cannot be invoked and must be held

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART        10/23

inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice. The promise must, in addition, be clear and unambiguous in its terms. To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages. It is only where a supposed contract does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, that there is no contract." *Aceves*, 192 Cal. App. 4th at 226 (cleaned up). Defendant offered Plaintiff between two and three million dollars to terminate the third pregnancy. Plaintiff's duty in this offer is clear: terminate the third pregnancy. As for Defendant, it is true that his promise does not set a single dollar amount that he must provide to Plaintiff. But Plaintiff's promise does set a minimum amount to satisfy his duty: $2,000,000 dollars. So Plaintiff expected to receive at least $2,000,000 for aborting the third pregnancy. I conclude that this promise provides a sufficient basis for determining Defendant's obligation to Plaintiff, and a rational basis for assessing damages. Defendant appears to argue that a promise to provide a defined range of payment in exchange for performance means such promise in unenforceable as a matter of law. He provides no authority for this proposition, nor have I found any.

Defendant's promise to pay Plaintiff at least $2,000,0000, his prior payment to her for terminating the second pregnancy, and his status as a well-paid professional hockey player, persuade me that the complaint adequately alleges her justifiable reliance. Defendant offering a range of payment does not make the promise unenforceable ambiguous, as it provides a minimum that I can assess performance with, and the only facts that could show Defendant had no ability to pay Plaintiff are statements by Defendant respecting his financial condition that I cannot consider under § 523(a)(2)(A). Plaintiff adequately pleads justifiable reliance, satisfying the fifth and sixth elements of *Siriani*.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          11/23

5. *Plaintiff Adequately Pleads Proximate Causation and Damages*

Finally, Defendant argues Plaintiff fails to plead damages, and how Defendant's statement proximately caused those damages. This argument is essentially a restatement of Defendant's prior argument that Defendant promising only a range of payment means Plaintiff could not have justifiably relied on his promise. Beginning with damages, I find Plaintiff does plead damages adequately: the agreement between Plaintiff and Defendant she alleges was for at least $2,000,000, so her damages are at least $2,000,000. As for causation, Defendant refused to pay Plaintiff anything when informed that she had terminated the pregnancy. This refusal to pay is the proximate cause of Plaintiff's damages.

Defendant cites multiple cases to support his argument that his providing a range of payment means his promise was unenforceable, but I will focus on *Cheema v. L.S. Trucking, Incorporated*, 39 Cal. App. 5th 1142 (2019). In *Cheema*, the trucker plaintiff purchased a dump truck and detachable box "with the understanding that [the defendant trucking company] would purchase the box from [the plaintiff]." *Id.* at 1145 In exchange, the defendant was to give the plaintiff priority in dispatching assignments. A separate written agreement provided for a rental fee for work done by plaintiff that involved using the box. But plaintiff later filed a civil action claiming, among other things, that because the defendant did not pay the plaintiff the $32,835.09 purchase price for the box, the box remained the plaintiff's property, and defendant could not charge him rental fees. *Id.* at 1145–46. The defendant had deducted rent from all payments it made to the plaintiff, but did not make any payment on the box until 10 months after the plaintiff bought the box; when the defendant did start making payments toward the box, such payments were for $1,000 a month, and the defendant noted on its checks that such payments were repaying a loan. *Id.* at 1146.

The trial court found the oral agreement unenforceable, and the Court of Appeal affirmed, finding the oral agreement too uncertain. While it was clear that the parties agreed that the plaintiff would sell the box to the defendant, no one argued "that the parties agreed on an exact price, payment schedule, or interest rate, and the trial court found that 'there was

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          12/23

never any clear and definite agreement between the parties that the [box] would transfer immediately to [the defendant] with [the] purchase price to be paid to [the plaintiff] in monthly installments.'" *Id.* at 1149. The defendant insisted that everyone knew ownership of the box was supposed to transfer immediately to the defendant, while the plaintiff said he had no such understanding. *Id.* at 1149–50. And while the defendant said "it was agreed that it would pay for the box 'plus interest' within three years with monthly $1,000 installments, [the defendant] d[id] not contend that anything was said about when installments would commence, what rate of interest would be paid or, most importantly, when ownership would be deemed to pass to LS [the defendant]." *Id.* at 1150. The Court of Appeal found that the parties' differences in opinion on the meaning of their agreement showed an absence of the requisite meeting of the minds on the agreement's essential terms.

The problem with Defendant's argument is that the facts Plaintiff alleges show no such disagreement on the material terms of their agreement. Defendant offered Plaintiff between two and three million dollars to terminate the third pregnancy. Plaintiff did so, and after informing Defendant asked him for a status update on payment. Defendant declined to pay Plaintiff. But he did not say Plaintiff misunderstood his offer in any way. He did not object to the payment range, nor did he say that payment was not yet due.

As another case cited by Defendant states: "Unexpressed provisions of a contract may be inferred from the writing or external facts. Thus it is well settled that a contract need not speci[f]y price if it can be objectively determined." *Forde v. Vernbro Corp.*, 218 Cal. App. 2d 405, 407–08 (1963) (citation and internal quotation marks omitted). When Defendant refused to pay Plaintiff upon learning the third pregnancy was terminated, he implicitly accepted both the amount of payment – at least $2,000,000 – and the timing – within a reasonable time after the abortion. I can infer both those contractual terms from the parties' conduct, which means their agreement is not indefinite.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          13/23

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

*6. Plaintiff's Complaint Satisfies Civil Rule 9(b)*

Next, Defendant argues that Plaintiff's complaint fails to satisfy the particularity requirement of Civil Rule 9(b). I disagree. As discussed above, when alleging fraud, Civil Rule 9(b), applicable in bankruptcy proceedings under Bankruptcy Rule 7009, requires a party "state with particularity the circumstances constituting fraud[.] Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See In re Craciun*, 2014 WL 2211742, at *5 (B.A.P. 9th Cir. May 28, 2014) (applying Civil Rule 9(b) to § 523(a)(2)(A) claims). A party alleging fraud must "'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted).

The who is Defendant. The what is promising to pay Plaintiff between two and three million dollars for aborting the third pregnancy, then reneging on that promise once Plaintiff provided evidence that she had terminated the third pregnancy. The when is June 4, 2018, when Defendant made the promise, and June 13, 2018, when Defendant stated he would not honor that promise. The where is Los Angeles County; while Plaintiff could be more specific on this point, Defendant does not explain why further specificity is necessary, especially given that these communications happened electronically (which satisfies the question of how). The why is, as Plaintiff states, both that Defendant believed the pregnancy would ruin his life, and that Plaintiff would not agree to terminate the pregnancy for less. And finally, what made the statement false is that, according to Plaintiff, Defendant had no intention of paying her once she terminated the pregnancy. As discussed above, she provides sufficient allegations for me to reasonably infer this is true, so her complaint satisfies Civil Rule 9(b).

*7. I Decline to Decide at this Stage Whether Public Policy Precludes Enforcement of the Agreement Plaintiff Alleges*

Defendant refers to a single case in support of his contention that adjudicating promises made in a private, consensual sexual relationship is against public policy, and not

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART            14/23

justiciable. *Perry v. Atkinson*, 195 Cal. App. 3d 14 (1987). I do not find *Perry* controlling but, even if I did, it is but a single case is a veritable sea of public policy concerns including the 14th Amendment, myriad California statutes, and other law pertinent to reproductive choices. Absent a more comprehensive argument on this point, I decline to decide it.

In *Perry*, the Court of Appeal was asked to decide whether a plaintiff can state a claim for fraud and deceit where "the behavior of which she complains is [the defendant's] breach of a promise to impregnate [the plaintiff] after she had an 'unwanted' abortion." *Id.* at 18. The facts were these: the plaintiff learned she was pregnant with the defendant's child. When she informed the defendant, he urged the plaintiff to have an abortion. When the plaintiff first declined, the defendant persisted, stating "he would like her to have his child, he wanted to postpone doing so for a year." *Id.* at 16. The defendant promised the plaintiff that "even if they were not together in a year, he would conceive a child with her by artificial insemination." *Id.* The defendant terminated the pregnancy based on the defendant's representation, but the defendant later revealed he had no intention to impregnate her again.

The Court of Appeal held such facts could not state a claim for fraudulent breach of a promise to impregnate, citing to *Stephen K. v. Roni L.*, 105 Cal. App. 3d 640 (1980). In *Stephen K.*, a paternity action, the court held that the defendant father could not maintain a cross-claim against the plaintiff mother where she "falsely represented she was taking birth control pills and in reliance on that representation, Stephen had sexual relations with her resulting in the birth of a child he did not want. The court held Roni's conduct towards Stephen was not actionable, reasoning 'although Roni may have lied and betrayed the personal confidence reposed in her by Stephen, the circumstances and the highly intimate nature of the relationship wherein the false representations may have occurred, are such that a court should not define any standard of conduct therefor.'" *Perry*, 195 Cal. App. 3d at 18 (quoting *Stephen K.*, 105 Cal. App. 3d at 643). Applying this holding, the *Perry* court said that, while the defendant "may have deliberately misrepresented his intentions to [the plaintiff] in order to persuade her to have the abortion, their procreative decisions were so intensely

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART                15/23

private that we decline to intervene. Tort liability cannot apply to the choice, however motivated, of whether to conceive or bear a child." 195 Cal. App. 3d at 19. In addition to *Stephen K.*, the *Perry* court noted California Civil Code § 43.4, which bars actions for damages from a fraudulent promise to marry or cohabit after marriage, and California Civil Code § 43.5(c), which bars actions for "[s]eduction of a person over the age of legal consent," as further grounds for finding the plaintiff's claim not actionable.

The *Perry* court also distinguished *Kathleen K. v. Robert B.*, 150 Cal. App. 3d 992 (1984), in a manner that is relevant to this adversary proceeding. In *Kathleen K.*, the plaintiff sued the defendant because the plaintiff allegedly contracted genital herpes through sexual intercourse with the defendant, who misrepresented that he was free of venereal disease. *Id.* at 994. The trial court dismissed the complaint, concluding the plaintiff's harm was not actionable under *Stephen K.*, but the Court of Appeal reversed. The *Kathleen K.* court affirmed the case implicated the defendant's constitutional right to privacy, but made clear that "[t]he right of privacy is not absolute, and in some cases is subordinate to" other rights; in that case, "the state's fundamental right to enact laws which promote public health, welfare and safety[.]" *Id.* at 996. (citation omitted). *Perry* found *Kathleen K.* inapplicable because it believed there were no countervailing policy considerations to prevent the defendant's privacy interest from making his promise to the plaintiff unenforceable.

For today, I conclude only that Defendant has not shown that Plaintiff's claims are barred by California public policy. "No court ought to refuse its aid to enforce a contract on doubtful and uncertain grounds. The burden is on the defendant to show that its enforcement would be in violation of the settled public policy of this state, or injurious to the morals of its people." *Moran v. Harris*, 131 Cal. App. 3d 913, 920 (1982) (cleaned up). Furthermore, "Before labeling a contract as being contrary to public policy, courts must carefully inquire into the nature of the conduct, the extent of public harm which may be involved, and the moral quality of the conduct of the parties in light of the prevailing

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART                    16/23

1  standards of the community." *Id.* (citations omitted).[4] I do not believe I can accomplish that

2  inquiry on the bare record presented here, especially where I cannot weigh evidence.

3      B.  Plaintiff's § 727(a)(2)–(7) Claims

4      Defendant also argues that Plaintiff's second claim for relief under § 727(a)(2)–(7)

5  fails to allege facts sufficient to state a claim under those provisions. Both parties agree that

6  Plaintiff's allegations for these claims are as follows: (1) Defendant failed to disclose all his

7  earnings, including future earnings; and (2) Defendant failed to adequately explain where the

8  money he has earned as a professional hockey player has gone. ECF 4-1, p. 12; ECF 7, p. 18.

9      *1.  Plaintiff's § 727(a)(2) Claim Must be Dismissed*

10     Section 727(a)(2)(A) and (B) say I must grant Defendant a discharge unless he, "with

11 intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody

12 of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or

13 has permitted to be transferred, removed, destroyed, mutilated, or concealed" his property

14 "within one year before the" filing date, or property of the estate after the filing date. "A

15 party seeking denial of discharge under § 727(a)(2) must prove two things: (1) a disposition

16 of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part

17 to hinder, delay or defraud a creditor through the act [of] disposing of the property. A

18 debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2). Because the

19 language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or

20

---

21      [4] Plaintiff argues I should deny this part of Defendant's motion on collateral estoppel
22 grounds, as the State court already overruled Defendant's public policy arguments in the
   context of a demurrer. "Collateral estoppel, or issue preclusion, bars the relitigation of issues
23 actually adjudicated in previous litigation between the same parties. For the doctrine to
   apply: (1) the issue must be identical to one alleged in prior litigation; (2) the issue must have
24 been 'actually litigated' in the prior litigation; and (3) the determination of the issue in the
   prior litigation must have been 'critical and necessary' to the judgment." *Beauchamp v.*
25 *Anaheim Union High School Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (citations omitted).
   Collateral estoppel requires a judgment, which at minimum means a final order. "An order
26 overruling a demurrer is not directly appealable, but may be reviewed on appeal from the
27 final judgment." *Apple Inc. v. Superior Ct.*, 18 Cal. App. 5th 222, 239 (2017) (citation omitted).
   I conclude this means an order overruling a demurrer cannot support collateral estoppel.
28
ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART            17/23

delay a creditor. Furthermore, lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010) (cleaned up). The "badges of fraud may support a finding of fraudulent intent. [They include:] (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer." *Id.* at 1200 (citation omitted).

I conclude Plaintiff's allegations fail to state a § 727(a)(2) claim. Taking judicial notice of the bankruptcy case I can say that Plaintiff was in poor financial condition throughout the year prior to filing bankruptcy. But Plaintiff's allegations do not show any other badges of fraud, nor do they allow me to reasonably infer that Plaintiff transferred or concealed property to hinder, delay, or defraud creditors. That is, Plaintiff leaps from Defendant's alleged failure to disclose income and inability to explain where his money has gone to the bare assertion that this is because he has transferred or hidden assets. There is no connective tissue between the facts alleged and the legal conclusion asserted. Without more, such as a specific allegation of concealment or transfer, I cannot make the inferences necessary to find that this claim is adequately pled, so it must be dismissed.

### 2. *Plaintiff's § 727(a)(3) Claim Must be Dismissed*

Section 727(a)(3) says I must grant Plaintiff a discharge unless he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" "[T]he purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." *In re Caneva*, 550 F.3d 755, 761 (9th Cir. 2008) (citation omitted). "The statute does not require

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART                18/23

absolute completeness in making or keeping records." *Id.* (citing *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)). "Rather, the debtor must 'present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past.'" *Caneva*, 550 F.3d at 761 (citation omitted). § 727(a)(3) is strictly construed to serve the Bankruptcy Code's purpose of giving debtors a fresh start. *Id.* (quoting *Matter of Kasler*, 611 F.2d 308, 310 (9th Cir. 1979)).

To succeed on a § 727(a)(3) claim, Plaintiff must show: "(1) that [Defendant] failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain [Defendant's] financial condition and material business transactions." *Caneva*, 550 F.3d at 761 (internal quotation marks omitted) (quoting *In re Cox*, 41 F.3d 1294 (9th Cir. 1994)). Upon such a showing, "'the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records.'" *Caneva*, 550 F.3d at 761 (citation omitted).

Plaintiff's allegations fail to state a claim under § 727(a)(3). While Plaintiff does allege that Defendant could not adequately explain his finances at the meeting of creditors, nothing in the complaint allows me to infer this was because he failed to maintain adequate records. That is, there are no allegations about the state of Defendant's records at all. This means Plaintiff fails to satisfy the first requirement of *Caneva*, so this claim must be dismissed.

### 3. Plaintiff's § 727(a)(4) Claim Must be Dismissed

Section 727(a)(4) says I must grant Defendant a discharge unless he "knowingly and fraudulently, in or in connection with the case made a false oath or account; presented or used a false claim; gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]" "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath. The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          19/23

information without having to conduct costly investigations. To prevail on this claim, a plaintiff must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Retz*, 606 F.3d at 1196–97 (cleaned up). I conclude this claim must also be dismissed. Plaintiff says Defendant did not disclose all of the "near fifty million he earned in [the] 11 years he played professional hockey ha[s] gone." ECF 1 ¶ 40. But nothing in the complaint says, or allows me to infer, that Defendant was required to disclose where all of the income he earned over more than a decade has gone; the petition for instance, only asks a debtor to list losses and transfers within one year of the petition date, BK ECF 1, p. 50–51, while the statement of financial affairs only asks for a debtor's income in the last three years, BK ECF 19. I also note that the complaint asks me to infer these alleged false oaths were made knowingly and fraudulently, but nothing in the allegations allows me to infer that. I can infer intent from the surrounding circumstances, but such circumstances must be pled. Because Plaintiff does not do so, this claim must be dismissed.

### 4. *Plaintiff's § 727(a)(5) Claim is Adequately Pled*

Section 727(a)(5) says I must grant Defendant a discharge unless he "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" "Under § 727(a)(5) an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets." *Retz*, 606 F.3d at 1205 (citations omitted). In *Retz*, "large amounts of money were transferred into and out of Retz's personal bank accounts, and he very rarely had any explanation for where the money went. There is also evidence in the record that Retz went on a spending spree just before filing for bankruptcy

to benefit both himself and [his company], purchasing computers, office furniture, servers,

luxury cars, a helicopter and hangar, and making gambling trips where he lost thousands of

dollars." *Id.* While Plaintiff's allegations are thin, I conclude she adequately states a claim

under § 727(a)(5). *Retz* makes clear that money qualifies as "identifiable assets." So Plaintiff's

allegations state that: (1) Defendant earned $20,000,000 in income over the three years prior

to filing his bankruptcy case, BK ECF 19, p. 2; (2) Defendant no longer had the vast

majority of that money when he filed the case, *see* BK ECF 1; and (3) Defendant's filings do

not explain where much of that money went. Plaintiff's § 727(a)(5) survives this motion.

### 5. *Plaintiff's § 727(a)(6) Claim Must be Dismissed*

Section 727(a)(6) says I must grant Defendant a discharge unless he "has refused, in

the [bankruptcy] case to obey any lawful order of the court, other than an order to respond

to a material question or to testify[.]" A party seeking to revoke a discharge under § 727(a)(6)

must show "that the debtor (a) was aware of the order; and (b) willfully or intentionally

refused to obey the order (i.e., something more than a mere failure to obey the order

through inadvertence, mistake or inability to comply)." *In re Michaels*, 2009 WL 7809926, at

*5 (B.A.P. 9th Cir. Feb. 27, 2009) (citing *In re Jordan*, 521 F.3d 430, 434 (4th Cir. 2008)). I

conclude this claim must be dismissed because Plaintiff fails to identify a court order that

Defendant has violated, either in the complaint or in her opposition to the motion.

### 6. *Plaintiff's § 727(a)(7) Claim Must be Dismissed*

Section 727(a)(7) says I must grant Defendant a discharge unless he "has committed

any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year

before the date of the filing of the petition, or during the case, in connection with another

case, under this title or under the Bankruptcy Act, concerning an insider[.]" I conclude this

claim must be dismissed because Plaintiff fails to allege that Defendant violated any of the

relevant provisions in connection with another bankruptcy case, concerning an insider or no.

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART                     21/23

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

C. <u>Leave to Amend is Appropriate Here</u>

Finally, I conclude it appropriate to grant Plaintiff leave to amend the § 727 claims I found needed to be dismissed above. The defects in pleading I identified do not appear to show leave to amend would be futile, as such defects appear factual, rather than legal, in nature. And since this is Plaintiff's first complaint, she has not had the benefit of an order like this one to structure an amended complaint. That said, should Plaintiff seek to reassert those claims, the allegations supporting them must answer the deficiencies described above.

## IV.  CONCLUSION

Defendant's motion to dismiss is granted in part and denied in part. It is granted for Plaintiff's § 727(a) claims, which Plaintiff fails to allege facts for, but denied as to Plaintiff's § 727(a)(5) claim, as there are sufficient facts to support that claim. The motion is also denied as to Plaintiff's § 523(a)(2)(A) claim, as Plaintiff pleads sufficient facts to satisfy its elements, and Defendant fails to show, at least so far, that this claim should be barred as a violation of California public policy. For ease of reference, the result is as follows: Plaintiff's §§ 523(a)(2)(A) and 727(a)(5) claims remain, while Plaintiff's §§ 727(a)(2)–(4) and (6)–(7) claims are dismissed without prejudice.

This disposition is also without prejudice to Defendant raising the public policy question again in a different motion that includes briefing and factual support sufficient to match the importance of this issue. Should Plaintiff wish to reassert the claims dismissed in this motion, she may file an amended complaint within 14 days of the entry of this order. If Plaintiff fails to do so, or fails to obtain an extension of that deadline, then this adversary proceeding shall proceed only on Plaintiff's §§ 523(a)(2)(A) and 727(a)(5) claims.

IT IS SO ORDERED.

**END OF ORDER**

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART                22/23

# COURT SERVICE LIST

[ECF recipients only]

ORDER GRANTING MOTION TO DISMISS
IN PART AND DENYING IN PART          23/23