Stephen D. Finestone (SBN 125675)
Ryan A. Witthans (SBN 301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:   (415) 421-2624
Fax:   (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Evander Frank Kane,
Debtor and Defendant

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re EVANDER FRANK KANE,<br>　　　Debtor. | Case No. 21-50028-SLJ<br>Chapter 7 |
| HOPE PARKER,<br>　　　Plaintiff,<br>　　　v.<br>EVANDER FRANK KANE,<br>　　　Defendant. | Adv. Proc. No. 21-5008 |
| CENTENNIAL BANK,<br>　　　Plaintiff,<br>　　　v.<br>EVANDER FRANK KANE,<br>　　　Defendant. | Adv. Proc. No. 21-5016<br><br>**DEFENDANT'S TRIAL BRIEF**[1]<br><br><u>Trial:</u><br>Date:　Beginning January 23, 2023<br>Time:　9:00 a.m.<br>Ctrm:　9 |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "BK" references are to the docket in the underlying bankruptcy case.

DEFENDANT'S TRIAL BRIEF　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　i

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1
II. STATEMENT OF FACTS .................................................................................. 1
   A. Personal Background ................................................................................ 1
   B. Background to Kane's Bankruptcy Filing ................................................ 1
   C. Post-Petition Events .................................................................................. 3
III. LEGAL ARGUMENT ........................................................................................ 4
   A. General Rule Applying to Objections to Discharge. ................................ 4
   B. Centennial's § 727(a)(2) Claim ................................................................ 4
   C. Centennial's § 727(a)(3) Claim ................................................................ 5
   D. Centennial's § 727(a)(4) Claim ................................................................ 8
   E. Centennial and Parker's § 727(a)(5) Claim ............................................ 10
IV. CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727 (B.A.P. 9th Cir. 1999), *aff'd.*, 5 F. App'x 743 (9th Cir. 2001) .................................................................................................................. 10
*Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279 (9th Cir. 1996) ................................................ 4
*Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755 (9th Cir. 2008) 6, 7, 12
*Cox v. Lansdowne (In re Cox)*, 904 F.2d 1399 (9th Cir. 1990) .................................................. 5, 6
*Davis v. Battistella (In re Battistella)*, Adv. Proc. No. 13-5137, 2016 Bankr. LEXIS 1964 (Bankr. N.D. Cal. May 9, 2016) ................................................................................................... 13
*Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751 (9th Cir. 1985) ................................. 10
*Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58 (B.A.P. 9th Cir. 1999) .............. 9
*Garcia v. Coombs (In re Coombs)*, 193 B.R. 557 (Bankr. S.D. Cal. 1996) ................................ 10
*Grogan v. Garner*, 498 U.S. 279 (1991) ....................................................................................... 4
*Hewitt v. Lemieux (In re Lemieux)*, Adv. Proc. No. 16-03065, 2017 Bankr. LEXIS 3272 (Bankr. N.D. Cal. Sep. 27, 2017) ........................................................................................... 11, 12, 13
*Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237 (9th Cir. 1997) ............................................... 4
*In re Kasler*, 611 F.2d 308 (9th Cir. 1979) ................................................................................... 4
*In re Nevett*, 2021 Bankr. LEXIS 1781, 2021 WL 2769799 (B.A.P. 9th Cir. July 1, 2021) .......... 7
*Khalil v. Developers Surety and Indemnity Co. (In re Khalil)*, 379 B.R. 163 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009) .............................................................................. 9, 10
*Kistler v. Fader (In re Fader)*, 414 B.R. 640 (Bankr. N.D. Cal. 2009) ............................. 7, 11, 12
*Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294 (9th Cir. 1994) ....................................... 4, 5, 6, 12
*Manning v. Watkins*, 474 B.R. 625 (N.D. Ind. 2012) ................................................................... 4
*Moffett v. Union Bank*, 378 F.2d 10 (9th Cir. 1967) ................................................................... 7
*Murtaza v. Sigmund (In re Murtaza)*, B.A.P. No. CC-15-1075-KuFTa, 2016 Bankr. LEXIS 1092 (B.A.P. 9th Cir. Apr. 5, 2016) ..................................................................................................... 9
*Olympic Coast Invest, Inc. v. Wright (In re Wright)*, 364 B.R. 51 (Bankr. D. Mont. 2007) ......... 11
*Radecki v. Snider (In re Snider)*, 2019 Bankr. LEXIS 683, 2019 WL 5883623 (Bankr. D. Nev. Feb. 28, 2019) .......................................................................................................................... 11
*Rafsanjani v. Kuchecki (In re Kuchecki)*, 2010 Bankr. LEXIS 5045, 2010 WL 6259966 (B.A.P. 9th Cir. Nov. 29, 2010) ........................................................................................................... 6, 8
*Retz v. Samson (In re Samson)*, 606 F.3d 1189 (9th Cir. 2010) ........................................ 4, 9, 10
*Roberts v. Erhard (In re Roberts)*, 331 B.R. 876 (B.A.P. 9th Cir. 2005), *aff'd*, 241 F. App'x 420 (9th Cir. 2007) ........................................................................................................................... 9
*Salehi v. Glob. Auto. Grp., Inc. (In re Salehi)*, B.A.P. No. EC-13-1171-TaKuJu, 2014 Bankr. LEXIS 2649 (B.A.P. 9th Cir. June 9, 2014) .............................................................................. 8
*Searles v. Riley (In re Searles)*, 317 B.R. 368 (B.A.P. 9th Cir. 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006) ....................................................................................................................... 9, 10
*Sfadia v. Bongkuk Int'l, Inc. (In re Sfadia)*, 2007 Bankr. LEXIS 4933, 2007 WL 7540987 (B.A.P. 9th Cir. Sep. 5, 2007) .............................................................................................................. 6, 7
*Spohn v. Carney (In re Carney)*, 558 B.R. 250 (Bankr. N.D. Ill. 2016) .................................... 10
*United States Tr. v. Knowling (In re Knowling)*, 2011 Bankr. LEXIS 4080, 2011 WL 5024298 (Bankr. D. Or. Oct. 20, 2011) ................................................................................................... 13
*United States Tr. v. Rojas (In re Rojas)*, 2011 Bankr. LEXIS 106, 2011 WL 66129 (Bankr. S.D. Cal. Jan. 3, 2011) ................................................................................................................ 11, 12
*Ward v. Thompson (In re Thompson)*, 2009 Bankr. LEXIS 4530, 2009 WL 7751298 (B.A.P. 9th Cir. Apr. 20, 2009) .............................................................................................................. 11, 13

**Statutes**

11 U.S.C. § 727 .................................................................................................................*passim*

**Rules**

Fed. R. Bankr. P. 2004 ................................................................................................. 3, 7, 8
Fed. R. Bankr. P. 4005 ....................................................................................................... 5

DEFENDANT'S TRIAL BRIEF iv

Defendant Evander Frank Kane ("Kane" or the "Defendant") submits the following trial brief for the objection to discharge complaint filed by Plaintiff Centennial Bank ("Centennial").[2]

## I. INTRODUCTION

Having twice unsuccessfully moved to dismiss Kane's Chapter 7 case, Centennial is pursuing an objection to Kane's discharge.[3] Centennial asserts that this Court should deny Kane a discharge under various provisions of § 727. Centennial's various theories and the applicable law are discussed below. Kane denies Centennial's allegations and requests that the Court deny the relief requested and enter a judgment in his favor.

## II. STATEMENT OF FACTS

Much of the factual background is familiar to the Court from matters in Kane's main bankruptcy case and will be established by the evidence at trial.

### A. Personal Background

Kane was 29 years old at the time he filed this case on January 9, 2021 (the "Petition Date"). He was raised in Vancouver, British Columbia, Canada, the oldest of three children of Perry and Sheri Kane. He is a professional hockey player, having started playing professional hockey directly out of high school at the age of eighteen. As of the Petition Date, Kane was under contract with the San Jose Sharks (the "Sharks"), having played for the Sharks since 2018. As of the Petition Date, Kane was living in San Jose, California, with his then-wife and nine-month-old daughter. Kane currently lives in Edmonton, Alberta, Canada, with his partner and two young children. He currently plays for the Edmonton Oilers hockey team.

### B. Background to Kane's Bankruptcy Filing

Though under a good contract as of the Petition Date, and having earned a sizeable sum over his career, Kane was deeply in debt. This debt did not arise overnight. Kane made some

---

[2] Hope Parker ("Parker") filed an objection to discharge under § 727(a)(5) in *Parker v. Kane*, Adv. Proc. No. 21-5008. Parker's claim is joined with Centennial's. This brief primarily focuses on Centennial's claims and only relates to Parker's claim when it addresses § 727(a)(5).

[3] One of the decisions denying the motion to dismiss was appealed by Centennial and is currently pending before the Ninth Circuit Court of Appeals.

DEFENDANT'S TRIAL BRIEF 1

wise choices in terms of real estate acquisition, but he was living beyond his means and over several years had borrowed large sums from various lenders. In addition, and has been disclosed in the Statement of Financial Affairs and discussed in Kane's declarations in the main case, he had a significant gambling problem. Kane bet at casinos and with bookies. His gambling had a negative effect on his life, financially and otherwise. Kane has received personal therapy to deal with it and other matters.

As for Kane's borrowing, loans were arranged by Sure Sports, LLC ("Sure Sports") and its principal, Leon McKenzie ("McKenzie"). Beginning in 2014, Sure Sports/McKenzie began arranging loans for Kane.[4] The loans were short in term and very expensive to obtain. With Sure Sports/McKenzie acting as a broker on his behalf, Kane obtained approximately 26 loans. Oftentimes, the loans simply paid off existing obligations, with Kane receiving little if any of the loan proceeds, with significant amounts going to Sure Sports and the lenders for the costs associated with each loan. The evidence at trial will include many of these loans, including the loans from Centennial and the other large creditors in the bankruptcy case. For ease of reference, a chart tracking the loans and the amounts disbursed to Kane is attached as **Attachment 1**.

Ultimately, Kane was unable to pay back the last series of loans. Kane retained John Fiero at Pachulski Stang Ziehl & Jones, along with a CPA recommended by Mr. Fiero, in October 2019. The goal was to reach a restructuring agreement with Kane's primary creditors. The primary lender creditors were Zions Bancorporation, Centennial Bank, Professional Bank, and South River Capital (collectively, the "Lenders"). The effort to reach a resolution with the Lenders was unsuccessful. They filed suit against Kane and pursued aggressive collection efforts, including asserting a security interest in Kane's salary.

On top of the pressure from the Lenders, as a result of the COVID-19 pandemic, a portion of the National Hockey League season for 2019–2020 was canceled, which decreased Kane's income for the season. Based on the ongoing litigation by the Lenders, including

---

[4] The Trustee filed suit against Sure Sports, alleging various wrongdoing in its representation of Kane. Kane understands this case is pending. *See Hjelmeset v. Sure Sports, LLC*, Adv. Proc. No. 22-5033.

DEFENDANT'S TRIAL BRIEF 2

Centennial's lawsuit naming the Sharks as an additional defendant in District Court in Miami, Florida, and the failure to make any progress in resolving things with the Lenders, Kane decided to file the instant bankruptcy case.

C. Post-Petition Events

Kane's bankruptcy case attracted considerable attention and scrutiny. Kane received voluminous requests for documents from the Chapter 7 Trustee, Fred Hjelmeset (the "Trustee"), and the Office of the United States Trustee ("UST"). Among other things, Kane provided bank statements for all bank accounts going back to January 2020, credit card statements, prior years' federal and state tax returns, mortgage statements, insurance information, information regarding various business entities and business ventures, a breakdown of the use of loan proceeds, an explanation of transactions reflected in bank statements and credit card statements, lease agreements, loan agreements, and various other documents reflecting his debts and financial history. Kane appeared for an initial meeting of creditors, which lasted approximately 2½ hours, and appeared for a continued meeting lasting approximately 30 minutes, after which time the Trustee concluded the meeting. Kane also sat for a multi-hour Bankruptcy Rule 2004 examination by Centennial, which included a sizeable document production.

In addition, Kane amended his Schedules and Statement of Financial Affairs several times to provide additional disclosures and information. BK 17, 18, 19, 29, 30, 37, and 272. Kane also provided access to his home in San Jose and real property in Vancouver, British Columbia, to realtors selected by the Trustee to opine as to the current value of the real property assets. Kane came to an agreement with the Trustee regarding the Vancouver real estate and funds on account. BK 202, 225. The Trustee sold Kane's San Jose home. Kane stipulated to numerous extensions of time with the Trustee to enable the Trustee to review information and decide whether to object to Kane's discharge. BK 68, 104, 149, 197, 235, 252. The Trustee did not pursue an objection to discharge.

Kane has conducted himself with honesty and candor throughout this case. Additional facts relevant to Centennial's claims are discussed below.

DEFENDANT'S TRIAL BRIEF 3

III.   **LEGAL ARGUMENT**

A.   General Rule Applying to Objections to Discharge.

A central purpose of the Bankruptcy Code is "to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (internal quotations removed). "[E]xceptions to dischargeability should be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *Lansdowne v. Cox (In re Cox)* ("*Cox II*"), 41 F.3d 1294, 1297 (9th Cir. 1994) (quoting *In re Kasler*, 611 F.2d 308, 310 (9th Cir. 1979)). Or stated conversely, "courts should construe § 727 liberally in favor of debtor and strictly against parties objecting to discharge." *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281 (9th Cir. 1996).

Centennial has twice tried unsuccessfully to dismiss Kane's Chapter 7 case. Some courts measure § 727(a)-relevant conduct against the standards applied to determine dismissal of a bankruptcy petition on the ground that it was filed in bad faith. *See Manning v. Watkins*, 474 B.R. 625, 642 (N.D. Ind. 2012). That standard is essentially whether, in reviewing the Debtor's conduct as a whole in relation to the case, the Court is left with the impression that the Debtor sought to thwart creditors, trustees, or the Court. *Id.* As the evidence will show, Kane has not.

B.   Centennial's § 727(a)(2) Claim

Centennial objects to Kane discharge under § 727(a)(2)(A). This portion of the Code denies a debtor a discharge for transferring or concealing property within one year of the Petition Date. "A party seeking denial of discharge under § 727(a)(2) must prove two things: '(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property.'" *Retz v. Samson (In re Samson)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (quoting *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)).

Centennial claims that Kane owns or owned a condominium in Vancouver that was not listed on Schedule A/B or identified as having been transferred within the year prior to the

DEFENDANT'S TRIAL BRIEF                                                                                                              4

Petition Date. The evidence at trial will show that Centennial's claim is without merit, as Kane neither owned nor transferred any interest in the condominium. As such, Centennial's claim under § 727(a)(2)(A) fails.

C. Centennial's § 727(a)(3) Claim

Section 727(a)(3) acts to deny a discharge to a debtor that "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." The purpose of § 727(a)(3) is to require a debtor to "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Cox v. Lansdowne (In re Cox)* ("*Cox I*"), 904 F.2d 1399, 1402 (9th Cir. 1990). The initial burden of proof under § 727(a)(3) is on the plaintiff. Bankruptcy Rule 4005. To state a prima facie case under § 727(a)(3), a creditor objecting to discharge must show "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Cox II*, 41 F.3d at 1296.

If, and only if, a creditor is able to establish a prima facie case, does the burden shift to the debtor, who must then justify the inadequacy or nonexistence of the records in order to maintain his discharge. *Id.* The court should consider all circumstances of the case to determine if a failure to keep records was justified. *Cox I*, 904 F.2d at 1403.[5] In the instant case, these may include, among other factors the Court deems relevant, (1) the debtor's intelligence and educational background; (2) his experience in business and financial matters; (3) the extent of his involvement in managing his business and financial affairs; (4) his reliance on other individuals

---

[5] In the case of a debtor who had relied on her husband to keep records, the Ninth Circuit has identified factors including (1) debtor's intelligence and educational background; (2) her experience in business matters; (3) extent of her involvement in business for which discharge is sought; (4) reliance on her husband to keep records, including what, if anything, debtor saw or was told that indicted that her husband was keeping records; (5) nature of marital relationship; and (6) any recordkeeping or inquiry duties imposed upon debtor by state law. *Cox I*, 904 F.2d at 1403 n.5; *Cox II*, 41 F.3d at 1297–98.

DEFENDANT'S TRIAL BRIEF 5

to keep records, including what, if anything, he saw or was told that indicated that other individuals were keeping records; (5) the nature of his relationship with those other individuals; and (6) any recordkeeping or inquiry duties imposed upon him by state law.[6] The Ninth Circuit has held the justification defense hinges on "whether others in like circumstances would ordinarily keep [records]." *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 763 (9th Cir. 2008) (quoting *Cox II*, 41 F.3d at 1299).

Two unpublished B.A.P. cases are instructive, even if they are not binding on this Court. The first is *Rafsanjani v. Kuchecki (In re Kuchecki)*, 2010 Bankr. LEXIS 5045, 2010 WL 6259966 (B.A.P. 9th Cir. Nov. 29, 2010). In that case, the debtor ran an automotive repair shop and became indebted to his cousin before filing for bankruptcy. In his bankruptcy case, the debtor produced only eight months of bank statements. The creditor asserted at trial (and on appeal) that the records produced by the debtor were insufficient to ascertain his true financial condition.[7] The bankruptcy court stated, and the B.A.P. affirmed, that this sort of argument was not evidence; it was mere speculation. The creditor provided no explanation as to how more complete bank statements were needed to ascertain the debtor's financial condition.

By contrast, the second unpublished B.A.P. case is *Sfadia v. Bongkuk Int'l, Inc. (In re Sfadia)*, 2007 Bankr. LEXIS 4933, 2007 WL 7540987 (B.A.P. 9th Cir. Sep. 5, 2007). The debtor in that case owned a steel fabrication business. The creditor sold materials to the business, and the business failed to pay, eventually resulting in a judgment of approximately $1 million. After failing to pay, but before the creditor obtained a judgment, the debtor sold his business to a third party. In consideration, the third party agreed to pay $300,000 (of which $200,000 was paid and $100,000 was owed) and assume the business's debts of approximately $1 million. None of this

---

[6] *See Cox I*, 904 F.2d at 1403 n.5; *Cox II*, 41 F.3d at 1297–98.

[7] The creditor argued that the records produced by the debtor "are not sufficient to ascertain his true financial condition because, although the partial bank statements show that the tax return and income statement under-report the amount of revenue flowing into the business, it is impossible to determine by how much because there are only eight months of bank statements. As a result, it is impossible to ascertain the true value of [the debtor's] business." *Kuchecki*, 2010 Bankr. LEXIS 5045 at *23–24.

DEFENDANT'S TRIAL BRIEF                                                                         6

was documented, and none of this was reported on the debtor's bankruptcy schedules. Moreover, the debtor claimed to have left all of his books and records with the business when he sold it, and had not seen them since. The B.A.P. affirmed the bankruptcy court's ruling that the debtor was barred from receiving a discharge by § 727(a)(3). It found that it was not reasonable that a person would leave all business records, or that he would not retain a copy of the sales agreement.[8]

A debtor must only "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Caneva*, 550 F.3d at 761. A debtor's "duty to keep records is measured by what is necessary to ascertain [his] financial status." *Moffett v. Union Bank*, 378 F.2d 10, 11 (9th Cir. 1967). In *Kistler v. Fader (In re Fader)*, 414 B.R. 640, 645 (Bankr. N.D. Cal. 2009) (Montali, J.), the court recognized that § 727(a)(3) does not require absolute completeness in the records, but a debtor must keep and preserve records that will enable his creditors to accurately ascertain his financial condition and business transactions. Moreover, the B.A.P. in *Sfadia* noted that "[d]ebtors are required to keep records for a 'reasonable' period of time for § 727(a)(3) purposes, and a court's determination of 'reasonableness' depends on the particular facts and circumstances of each case."[9] 2007 Bankr. LEXIS 4933 at *31.

---

[8] "Debtor's argument that he disclosed the disposition of the $200,000 to the trustee or during the Bankruptcy Rule 2004 exam, or that all the records were left with FTM [the sold business] and then lost or destroyed, does not excuse his failure to keep and produce financial records from the time he owned and sold FTM. Debtor proffers no plausible argument for the propositions, necessary for him to prevail, that it is reasonable to sell a business having several hundred thousand dollars' worth of inventory for over a million dollars, with a hundred thousand dollars or more still owing, on an oral agreement and without keeping any records whatsoever, or that it is justifiable to leave whatever records there were with the purchaser." *Sfadia*, 2007 Bankr. LEXIS 4933 at *33.

[9] The unpublished B.A.P. decision of *In re Nevett*, 2021 Bankr. LEXIS 1781, 2021 WL 2769799 (B.A.P. 9th Cir. July 1, 2021), provides persuasive guidance on how to determine the limits of a reasonable lookback period. Though the debtor's discharge was ultimately denied, the B.A.P. affirmed the bankruptcy court's finding that the debtor was justified in not keeping records pertaining to a certain loan that was comparatively small, that was taken out five years before his bankruptcy petition, and that had been largely repaid. This limitation undercuts Centennial's request to expand the lookback period to cover the years prior to the Lenders' loans to Kane, and into transactions that were paid off by the Lenders' loans or earlier refinances.

Regarding discovery requests generally and the issue raised in Kane's motion in limine, a failure to produce documents in response to a discovery request, alone, does not justify denial of discharge under § 727(a)(3). *Salehi v. Glob. Auto. Grp., Inc. (In re Salehi)*, B.A.P. No. EC-13-1171-TaKuJu, 2014 Bankr. LEXIS 2649, at *25–27 (B.A.P. 9th Cir. June 9, 2014) (unpublished). The B.A.P. in *Salehi* explained that the creditor, Global Automotive, could have obtained written copies of the debtor's bank records through formal discovery in the adversary proceeding if it was not satisfied with what he produced in response to his Bankruptcy Rule 2004 examination. Similarly, in *Kuchecki*, the creditor did not seek to obtain additional documents through discovery, and, even if he did and "[e]ven if [the debtor] did not have them, they were likely available through [the debtor's] bank." 2010 Bankr. LEXIS 5045 at *24.

As will be presented at trial, given the circumstances of the case, Kane provided considerable explanation of and documentation for his past financial transactions for a reasonable period of time.

### D. Centennial's § 727(a)(4) Claim

Centennial asserts Kane made the following "false oaths," which allegedly justify denying him a discharge:

1. Centennial argues that Kane's signing of his Petition, which included the checked box answering "Yes" in question 16.b, that his debts were primarily business debts, constitutes a false oath.

2. Centennial asserts that Kane made a false oath because his Statement of Financial Affairs does not disclose any "gifts" to his family members in response to question 13, even though his Schedule J discloses $15,000 in monthly support to his family members at line 19.

3. Centennial claims that Kane made a false oath by listing his income in Schedule I on the Petition Date at $0, somehow ignoring the lengthy explanation of his future salary attached to Schedule I.

4. Centennial claims that Kane owns or owned a condominium in Vancouver that was not listed on Schedule A/B or identified as having been transferred within the year prior to the Petition Date.

Turning to the law, § 727(a)(4)(A) provides the court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Khalil v. Developers Surety and Indemnity Co. (In re Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009) (quoting *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999)).

A plaintiff objecting to a debtor's discharge under § 727(a)(4)(A) bears the burden to prove by a preponderance of the evidence that "(1) [the d]ebtor made . . . a false statement or omission, (2) regarding a material fact, and (3) did so knowingly and fraudulently." *Khalil*, 379 B.R. at 172 (citing *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006); *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005), *aff'd*, 241 F. App'x 420 (9th Cir. 2007)).

A false oath may involve a false statement or an omission in the debtor's Schedules or Statement of Financial Affairs. *Retz*, 606 F.3d at 1196 (quoting *Khalil*, 379 B.R. at 172). "Materiality" is "conceived of broadly, as including any fact that bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Murtaza v. Sigmund (In re Murtaza)*, B.A.P. No. CC-15-1075-KuFTa, 2016 Bankr. LEXIS 1092, at *10 (B.A.P. 9th Cir. Apr. 5, 2016); *Khalil*, 379 B.R. at 173 (quoting *Wills*, 243 B.R. at 62). "Knowingly" means deliberate and conscious, while the elements of "fraudulently" as used in this statute has a meaning similar to common law fraud, but materiality replaces the elements of reliance and proximate causation of damages. *Roberts*, 331 B.R. at 883–84. Thus, a creditor must show that the debtor made false statements or omissions that at the time he knew were false, with the intention and purpose of deceiving the creditors. *Id*.

The debtor's intent must be actual, not constructive, and may be established by circumstantial evidence or by inferences from course of conduct. *Id*. (citing *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753 (9th Cir. 1985)). The Ninth Circuit B.A.P. explained the matter as follows: "[t]he essential point is that there must be something . . . which suggest[s] that the debtor intended to defraud creditors or the estate. For instance, multiple omissions of material assets or information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal." *Khalil*, 379 B.R. at 175 (quoting *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 565–66 (Bankr. S.D. Cal. 1996)).

Ninth Circuit case law holds that prompt correction of an inaccuracy or omission may be evidence probative of lack of fraudulent intent. *Searles*, 317 B.R. at 377 (citing *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 733 (B.A.P. 9th Cir. 1999), *aff'd.*, 5 F. App'x 743 (9th Cir. 2001)). Moreover, a debtor who acts in reliance on the advice of his attorney may lack the fraudulent intent required to deny him a discharge of his debts. *Retz*, 606 F.3d at 1199.

Finally, an important consideration is whether allegedly omitted information is disclosed elsewhere in debtor's filing, as such disclosure weighs against a creditor's case. *See Spohn v. Carney (In re Carney)*, 558 B.R. 250, 257–58 (Bankr. N.D. Ill. 2016). A disclosure of information elsewhere in the debtor's filings is suggestive of confusion rather than intent to hide information. *Id.* at 261.

The evidence at trial will indicate that the alleged statements are not false in the first instance. Even were the Court to ultimately find any of the statements were inaccurate (which Kane disputes), any inaccuracies or omissions were not material, knowing or fraudulent.

E. <u>Centennial and Parker's § 727(a)(5) Claim</u>

Section 727(a)(5) provides that a debtor may be denied a discharge for failing to "explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." The Ninth Circuit set forth the analysis for a claim under § 727(a)(5) in *Retz*: "an objecting party bears the initial burden of proof and must demonstrate: (1) debtor at one time, not too remote

DEFENDANT'S TRIAL BRIEF 10

from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets." 606 F.3d at 1205 (9th Cir. 2010) (quoting *Olympic Coast Invest, Inc. v. Wright (In re Wright)*, 364 B.R. 51, 79 (Bankr. D. Mont. 2007)). A debtor's testimony may provide satisfactory evidence to explain the disposition of assets. *Radecki v. Snider (In re Snider)*, 2019 Bankr. LEXIS 683, 2019 WL 5883623 (Bankr. D. Nev. Feb. 28, 2019). Whether a debtor satisfactorily explains a loss of assets is a question of fact. *Ward v. Thompson (In re Thompson)*, 2009 Bankr. LEXIS 4530, at *15, 2009 WL 7751298 (B.A.P. 9th Cir. Apr. 20, 2009) (citations omitted). The bankruptcy court has a great deal of discretion in determining whether an explanation is satisfactory so as to defeat the objection. *Id*.

Therefore, to make a claim for relief under § 727(a)(5), Centennial must prove the disappearance of substantial assets, at which point the burden shifts to the debtor to explain the loss of those assets. *See Hewitt v. Lemieux (In re Lemieux)*, Adv. Proc. No. 16-03065, 2017 Bankr. LEXIS 3272, at *29 (Bankr. N.D. Cal. Sep. 27, 2017) (Blumenstiel, J.) (citing *Fader*, 414 B.R. at 645).

Centennial points principally to the $20 million in compensation that Kane supposedly received in the last three years preceding the Petition Date, some $14,350,000 in funds borrowed from the Lenders during that same time period, and $2,150,000 in various unsecured claims listed in the schedules. As will be presented at trial, Centennial cannot make its prima facie case. As a preliminary matter, Centennial's assertion that Kane received $20 million in compensation in the three years pre-petition fails to account for deductions and withholdings that were part of his Player's Contract with the Sharks and a result of the COVID-19 cancelations. Furthermore, its estimation of borrowed funds fails to take into account the net amount Kane actually received, as the loans primarily paid off existing debt.

The case of *United States Tr. v. Rojas (In re Rojas)*, 2011 Bankr. LEXIS 106, at *10–13, 2011 WL 66129 (Bankr. S.D. Cal. Jan. 3, 2011), is instructive. In *Rojas*, the plaintiff pointed to considerable deposits into various accounts, as well as cash withdrawals. The court explained

that deposits alone do not establish evidence that a certain amount of assets existed at a certain point in time. Looking solely at the deposits, without evidence of the source or of withdrawals, did not identify a particular asset for which the debtor would be required to account. A deposit is simply a transaction; it is not necessarily a net gain of assets to the debtor. The *Rojas* court reasoned if the plaintiff wanted to rely on the accounts and their contents to support its § 727(a)(5) claim, it had to provide evidence that (1) on a date certain, not too remote from the petition date, the debtor's accounts had balances of $X; (2) that as of the petition date, the accounts had balances of less than $X; (3) that the schedules and statements do not provide an adequate explanation for the disposition of the assets; and (4) the plaintiff requested explanation from the Debtor about the missing assets. Here, as will be established at trial, most if not all of the loans identified by Centennial (including Centennial's) were used to pay off existing obligations. Moreover, this is not a case where Kane pre-petition received a large sum from an outside source and was unable to account for it as of the Petition Date. *See Rojas*, 2011 Bankr. LEXIS 106 at *12. Rather, the exhibits and testimony at trial will show Kane earned a salary over a period of time that was insufficient to meet the high expenses of his life and he obtained loans to pay off existing obligations.

The courts in this District have long adhered to the principle of a "fresh start" and the presumption in the debtor's favor. *See Fader*, 414 B.R. at 646. In *Fader*, even without adequate records, the court held that *Caneva* and *Cox II* do not foreclose adequate explanations, and Judge Montali accepted the debtor's explanation that he expended over $200,000 in proceeds of his friends' personal loans and funds from his wholly owned LLC, drawn from ATMs or cashed from bank accounts, to run his business and pay personal expenses. *Id.* at 645–46. The *Fader* court found the debtor credible, and his testimony was not rebutted. *Id.* at 646. In *Lemieux*, where a debtor withdrew funds from his wholly owned company and admitted that he did not keep records of how he spent that money, Judge Blumenstiel found the debtor adequately explained the disposition of the withdrawals toward his personal expenses. 2017 Bankr. LEXIS 3272 at *30–31. The *Lemieux* court stated the debtor's poor accounting skills did not justify denial of his discharge, particularly where the debtor's methods for estimating those expenses

were reasonable.[10] *Id.* at 31. "[Section] 727(a)(5) is not appropriately used to deny a discharge to business operators who through inadvertence, lack of competence, or both, maintain less than pristine financial records." *Id.* (quoting *United States Tr. v. Knowling (In re Knowling)*, 2011 Bankr. LEXIS 4080, 2011 WL 5024298 (Bankr. D. Or. Oct. 20, 2011)).

In *Davis v. Battistella (In re Battistella)*, Adv. Proc. No. 13-5137, 2016 Bankr. LEXIS 1964, at *5 (Bankr. N.D. Cal. May 9, 2016) (Jaroslovsky, J.), where the UST argued the debtor could not satisfactorily explain the loss of $1.6 million he received from investors, Judge Jaroslovsky remarked it did not take much of a "leap of faith" to believe a car dealer debtor who testified that he sustained large losses while trying to keep his business afloat at the height of the Great Recession, and the court did not believe the assets were "stuffed in a mattress somewhere." And the Ninth Circuit B.A.P. in *Thompson* considered the debtor's testimony at trial and found no clear error in the bankruptcy court's decision that the debtor explained in sufficient detail that he was out of work, he used the refinance proceeds to pay bills owed to several people, and he made mortgage payments. 2009 Bankr. LEXIS 4530 at *16–18.

Centennial cannot show any identifiable assets that went missing or are unaccounted for, but even if there has been a dissipation of Kane's assets, the exhibits and testimony at trial will satisfactorily explain where Kane's earnings and the loan proceeds went, and why Kane had insufficient assets to pay his debts.

## IV. CONCLUSION

Based on the legal argument presented above and the evidence to be presented at trial, Evander Kane respectfully requests that the Court deny Centennial the relief requested and enter judgment in his favor.

---

[10] The debtor, Mr. LeMieux, testified that his Exhibit J represented his best estimate of the disposition of cash withdrawals from his wholly owned company during the pre-petition period emphasized by the creditors. The debtor maintained that many of his expenses were fixed and that he had copies of cashier's checks to corroborate his estimates, which he believed to be fairly accurate, if not exactly correct. *Lemieux*, 2017 Bankr. LEXIS 3272 at *12.

DEFENDANT'S TRIAL BRIEF 13

Dated January 17, 2023　　　　　　　　　　FINESTONE HAYES LLP

　　　　　　　　　　　　　　　　　　　　　/s/ Stephen D. Finestone
　　　　　　　　　　　　　　　　　　　　　Stephen D. Finestone
　　　　　　　　　　　　　　　　　　　　　Attorneys for Evander Frank Kane,
　　　　　　　　　　　　　　　　　　　　　Debtor and Defendant

DEFENDANT'S TRIAL BRIEF　　　　　　　　　　　　　　　　　　　　　14