ANTHONY & PARTNERS, LLC
JOHN A. ANTHONY (FL SBN 0731013)
  janthony@anthonyandpartners.com
ANDREW J. GHEKAS (FL SBN 0119169)
*Both Appearing Pro Hac Vice*
aghekas@anthonyandpartners.com
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813.273.5616
Facsimile: 813.221.4113

NIESAR & VESTAL LLP
PETER C. CALIFANO (SBN 129043)
  pcalifano@nvlawllp.com
JOHN A. KELLEY (SPN 194073)
  jkelley@nvlawllp.com
90 New Montgomery St. 9th Floor
San Francisco, California 94105
Telephone: 415.882.5300
Facsimile: 415.882.5400

Attorneys for Plaintiff
CENTENNIAL BANK

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**[San Jose Division]**

| | |
|---|---|
| In re<br><br>EVANDER FRANK KANE,<br>　　　　Debtors. | CASE NO. 21-50028 SLJ<br><br>Chapter 7 |
| HOPE PARKER,<br>　　　　Plaintiff,<br>v.<br><br>EVANDER KANE,<br>　　　　Defendant. | Adv. No. 21-5008 |
| CENTENNIAL BANK,<br>　　　　Plaintiff,<br>v.<br><br>EVANDER KANE,<br>　　　　Defendant. | Adv No. 21-05016<br><br>**CENTENNIAL BANK'S TRIAL BRIEF**[1]<br><br>Trial Commencement Date: January 23, 2023<br>Time:　9:00am<br>Judge:　Chief Judge Stephen L. Johnson<br>Place:　Courtroom 10<br>　　　　280 South First Street<br>　　　　San Jose, CA 95113 |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

BRIEF STATEMENT OF FACTS ................................................................................................ 1

LEGAL ARGUMENT ................................................................................................................... 3

    A. Burden of Proof ................................................................................................................ 3

    B. Kane Failed to Maintain or Preserve Adequate Books and Records Under 11 U.S.C. §727(a)(3) ................................................................................................................................. 3

    C. Kane Failed to Explain Satisfactorily Loss of Assets Under 11 U.S.C. §727(a)(5). 7

    D. Courts Have Held Reasonable Look-Back Period Can Be More Than Two Years 10

    E. Kane, With The Requisite Intent, Provided False Testimony Under Oath ............. 11

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

Bell v. Stuerke (In re Stuerke), 61 B.R. 623 (9th Cir. BAP 1986)..................................................... 9

Blackwell Oil Co. v. Potts (In re Potts), 501 B.R. 711 (Bankr. D. Colo. 2013) ............................ 10

Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987) ............................................................ 12

Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755 (9th Cir. 2008) ....... 4, 6

Consumers Oil Co. v. Adeeb (In re Adeeb), 787 F.2d 1339 (9th Cir. 1986) .................................... 3

Devers v. Bank of Sheridan (In re Devers), 759 F.2d 751 (9th Cir. 1985) ..................................... 3

First Beverly Bank v. Adeeb (In re Adeeb, 787 F.2d 1339 (9th Cir. 1986).................................... 12

Hunt v. Steffensen (In re Steffensen), 534 B.R. 180 (Bankr. D. Utah 2015)................................... 5

In re Beaubouef, 966 F.2d 174 (5th Cir. 1992) ............................................................................. 11

In re Bodenstein, 168 B.R. 23 (Bankr. E.D.N.Y. 1994)................................................................... 8

In re Bowman, 173 B.R. 922 (9th Cir. BAP 1994) .......................................................................... 3

In re Brandenfels, BAP No. OR-14-1145-FJuKi, 2015 WL 5883317 (9th Cir. BAP 2015) ............ 4

In re Carter, 236 B.R. 173 (Bankr. E.D. Pa. 1999) ........................................................................ 9

In re Chalik, 748 F.2d 616 (11th Cir. 1984).............................................................................. 9, 11

In re Chen, BAP No. WW-17-1067-KuFB, 2017 WL 4768104 (9th Cir. BAP 2017) ..................... 6

In re Chu, 511 B.R. 681 (Bankr. D. Haw. 2014) ............................................................................ 8

In re Dolin, 799 F.2d 251 (6th Cir. 1986) ....................................................................................... 9

In re Hansen, 325 B.R. 746 (Bankr. N.D. Ill. 2005) ....................................................................... 8

In re Hazelrigg, BAP No. WW-13-1230-TaDJu, 2013 WL 6154102 (9th Cir. BAP Nov. 19, 2013) .................................................................................................................................................... 8

In re Hermanson, 273 B.R. 538 (Bankr. N.D. Ill. 2002) ............................................................... 11

In re Isles, 297 B.R. 910 (Bankr. S.D. Fla. 2003) .......................................................................... 4

In re Juzwiak, 89 F.3d 424 (7th Cir. 1996) ..................................................................................... 5

In re Khalil, 379 B.R. 163 (9th Cir. BAP 2007) ........................................................................... 12

In re Long, 2:19-ap-01086-ER, 2020 WL 8184203 (Bankr. C.D. Cal. Nov. 30, 2020) ................ 10

In re Mann, 2014 WL 2523451 (Bankr. D.S.C. June 4, 2014) ....................................................... 6

In re Nevett, BAP No. SC-20-1154-SGB, 2021 WL 2769799 (9th Cir. BAP July 1, 2021)... 4, 5, 6, 10

In re Racer, 580 B.R. 45 (Bankr. E.D.N.Y. 2018) ................................................................. passim

In re Russo, 3 B.R. 28 (Bankr. E.D.N.Y. 1980)............................................................................... 5

In re Stiff, 512 B.R. 893 (Bankr. E.D. Ky. 2014) ............................................................... 10

In re Suttles, 819 F.2d 764 (7th Cir. 1987) ......................................................................... 4

In re Tan, 2007 WL 7541007 (9th Cir. BAP Sep. 28, 2007) ....................................... 4, 10

In re Wills, 243 B.R. 58 (9th Cir. BAP 1999) ................................................................... 11

In re Yanni, 354 B.R. 708 (Bankr. E.D.Pa. 2006) .............................................................. 9

Lansdowne v. Cox (In re Cox), 41 F.3d 1294 (9th Cir. 1994) ................................. 4, 5, 10

Peterson v. Scott (In re Scott), 172 F.3d 959 (7th Cir. 1999) ......................................... 4, 5

Retz v. Samson (In re Retz), 606 F.3d 1189 (9th Cir. 2010) ......................................... 8, 12

Rhoades v. Wikle, 453 F.2d 51 (9th Cir. 1971 .................................................................. 4

Sfadia v. Dongkuk Int'l, Inc. (In re Sfadia), BAP No. CC-06-1176-MaBPa, 2007 WL 7540987
 (9th Cir. BAP Sept. 5, 2007) ....................................................................................... 10

Sterling Int'l, Inc. v. Thomas (In re Thomas), Adv. No. 01-06321, 2003 WL 27981707 (Bankr. D.
 Idaho July 17, 2003) ..................................................................................................... 4

The Cadle Co. v. Terrell, 2002 WL 22075 (N.D. Tex. Jan. 7, 2022), aff'd, 46 Fed. Appx. 731,
 2002 WL 1973217 (5th Cir. July 30, 2002) .................................................................. 6

United States Tr. v. Hong Minh Tran (In re Hong Minh Tran), 464 B.R. 885 (Bankr. S.D. Cal.
 2012) ......................................................................................................................... 6, 8

United States Tr. v. Macway (In re Macway), No. 14-146680, 2016 WL 4039745 (9th Cir. July
 28, 2016) ....................................................................................................................... 6

Western Wire Works, Inc v. Lawler (In re Lawler), 141 B.R. 425 (9th Cir. BAP 1992) ................. 3

**STATUTES**

11 U.S.C. §727(a)(3) ........................................................................................................ 3

11 U.S.C. §727(a)(4)(A) ................................................................................................. 11

11 U.S.C. §727(a)(5) ........................................................................................................ 8

**RULES**

Fed. R. Bankr. P. 4005 ...................................................................................................... 3

Plaintiff, Centennial Bank, an Arkansas state-chartered bank ("Centennial"), hereby submits this brief in support of its complaint objecting to the discharge of Defendant, Evander Frank Kane ("Kane"), under 11 U.S.C. §727(a), in compliance with "Trial Scheduling Order" [Doc. 33] entered in the above-captioned adversary proceeding (this "Adversary Proceeding") on February 25, 2022.

Kane's discharge should be denied under 11 U.S.C. §727(a)(3) because he has failed in his obligations to keep and maintain personal books and records regarding his substantial expenditures of cash and disposition of loan proceeds received by him totaling in excess $39,000,000 in the short five to six years preceding his bankruptcy filing.

Discharge should also be denied under 11 U.S.C. §727(a)(5) as Kane has failed to explain the loss/disposition of over $30,000,000 in identifiable assets Kane derived from various loan proceeds and in gross salary as a highly compensated professional athlete in the years immediately preceding his bankruptcy filing. In the majority of instances, Kane simply "does not know" and "cannot recall" what happened to these assets. In the very limited instances where Kane attempted to offer an explanation, Kane could only manufacture the most generalized, vague, and indefinite account.

Kane's intent is not relevant in determining whether he kept adequate records and explained satisfactorily under §§ 727(a)(3) and (a)(5), respectively.

Finally, denial of discharge is appropriate as well under 11 U.S.C. §727(a)(4). Kane knowingly, and with the requisite intent, made a false statement in his bankruptcy schedules that his debts were "primarily business debts" instead of "primarily consumer debts" as his prior bankruptcy attorney admitted. This false statement allowed Kane to bypass the "means test" and remain under Chapter 7 – having a vast impact on the bankruptcy process.

**BRIEF STATEMENT OF FACTS**

Kane is a professional ice hockey player, playing in the National Hockey League, and has been employed as such since 2009. At the time of filing his Petition, Kane was under contract with

1

the San Jose Sharks pursuant to a "National Hockey League Standard Player's Contract" (the "Player's Contract"). Under the Player's Contract, Kane is scheduled to earn a total of $29,000,000 in total compensation from and after his initiation of the Bankruptcy Case. In just the three years immediately preceding Kane's filing of the Petition, he admittedly earned over $22,000,000 in total compensation.

Despite this reality, Kane has filed his chapter 7 Petition, signaling that he wishes to pay his creditors nothing, while maintaining his prolific pre-petition lifestyle. Kane has admitted to having $18,081,019.87 in non-priority, creditor claims unsecured by any real property or tangible assets. In fact, Kane disclosed minimal assets not encumbered with primarily real property liens, including only $38,895.65 in his various bank accounts held across two countries.

Centennial requested documents and information to ascertain Kane's true financial condition considering the vast wealth Kane was able to amass just shortly before initiating the Bankruptcy Case, and yet, admitted to only possessing $38,895.65 as of the Petition Date. Where did all of Kane's assets go? What did Kane need over $18,000,000 in loans for and what did he use it on? Kane does not know, and the lack of documentation and records to support the disposition of the same is astonishing.

Separate and apart from Kane's failure to preserve or maintain documents to support the disposition of substantial assets totaling nearly $40,000,000, is the fact that in order to avoid the Means Test, Kane swore under penalty of perjury that his debts were primarily business debts, or those "debt that [Kane] incurred to obtain money for a business or investment or through the operation of a business or investment." This gross misrepresentation, tethered with other misrepresentations, changing stories, and multiple amendments to conceal the real truth, only solidify that Kane is not the honest but unfortunate debtor deserving of a discharge.

While Centennial moved for summary judgment, this Court declined to hear the same.

2

Regardless, the evidence at trial will show that Kane is not entitled to a discharge and judgment is to be entered in favor of Centennial.

## LEGAL ARGUMENT

**A.   BURDEN OF PROOF**

Centennial bears the burden of proving by a preponderance of the evidence a complaint objecting to a discharge. Fed. R. Bankr. P. 4005. The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the objecting party. Consumers Oil Co. v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986). The purpose of a bankruptcy discharge is to release the honest debtor from his financial burdens and to facilitate debtor's unencumbered fresh start. In re Bowman, 173 B.R. 922, 924 (9th Cir. BAP 1994).

Once the complaining party makes a prima facie showing that the defendant violated Section 727, the burden shifts to the defendant to rebut that evidence by explaining or justifying the conduct. Devers v. Bank of Sheridan (In re Devers), 759 F.2d 751, 754 (9th Cir. 1985) ("[I]t is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie showing."); Western Wire Works, Inc v. Lawler (In re Lawler), 141 B.R. 425 (9th Cir. BAP 1992).

**B.   KANE FAILED TO MAINTAIN OR PRESERVE ADEQUATE BOOKS AND RECORDS UNDER 11 U.S.C. §727(A)(3)**

Section 727(a)(3) of the Bankruptcy Code states in pertinent part:

> (a) The court shall grant the debtor a discharge, unless - -
>
> > (3) debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information … from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure … was justified under all of the circumstances of the case.

11 U.S.C. §727(a)(3).

Thus, denial of discharge is warranted where the objecting party demonstrates (1) the debtor failed to keep or preserve adequate books and records, (2) that such failure makes it impossible to ascertain the debtor's financial condition, and (3) the debtor cannot demonstrate that such failure

3

was justified under all of the circumstances. Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008); Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1299 (9th Cir. 1994). The burden then shifts to the debtor to justify the inadequacy of the records. Caneva 550 F.3d at 761. Denial of discharge under Section 727(a)(3) does not require a showing of fraudulent intent. In re Nevett, BAP No. SC-20-1154-SGB, 2021 WL 2769799, *11 (9th Cir. BAP July 1, 2021) (citing Cox, 41 F.3d at 1297; accord, Sterling Int'l, Inc. v. Thomas (In re Thomas), Adv. No. 01-06321, 2003 WL 27981707, at *9 (Bankr. D. Idaho July 17, 2003)); See also In re Suttles, 819 F.2d 764 (7th Cir. 1987).

A debtor has an affirmative duty to maintain and preserve information by presenting sufficient written evidence to enable creditors to reasonably ascertain a debtor's present financial condition and to follow his business transactions for a reasonable period in the past. Caneva, 550 F.3d at 761 (quoting Rhoades v. Wikle, 453 F.2d 51, 53 (9th Cir. 1971)); In re Brandenfels, BAP No. OR-14-1145-FJuKi, 2015 WL 5883317, at *6 (9th Cir. BAP 2015). There is no requirement that the documents be absolutely complete or impeccably maintained. Id. at 762-63. However, creditors and the trustee are not required to sift through volumes and reams of documents to reconstruct a debtor's financial transaction but are entitled to be supplied with reliable information to perform such an analysis. In re Isles, 297 B.R. 910 (Bankr. S.D. Fla. 2003). It is not enough for the debtor to provide records about his overall financial situation; he must also provide records adequate to allow creditors to trace all of his transactions. Brandenfels, 2015 WL 5883317, at *6.

The Ninth Circuit has stated that Section 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." Caneva, 550 F.3d at 762 (quoting Peterson v. Scott (In re Scott), 172 F.3d 959, 969 (7th Cir. 1999); see also In re Tan, 2007 WL 7541007, at *12 (9th Cir. BAP Sep. 28, 2007) ("Keep" means to maintain a record, as in "to keep a diary."). Thus, the affirmative duty to create records means that the debtor must have acted

4

to keep contemporaneous records when transactions occurred. See Hunt v. Steffensen (In re Steffensen), 534 B.R. 180, 199 (Bankr. D. Utah 2015). And when a debtor is sophisticated and has carried on a business involving substantial assets, "creditors have an expectation of greater and better record keeping." Id. (quoting Scott, 172 F.3d at 970). Further, "[j]ustification for [a] bankrupt's failure to keep or preserve books or records will depend on … whether others in like circumstances would ordinarily keep them." Cox, 41 F.3d at 1299 (quoting In re Russo, 3 B.R. 28, 34 (Bankr. E.D.N.Y. 1980)). "In such cases, justification must indicate that because of unusual circumstances, the debtor was absolved from the duty to maintain records [him]self." Id. 41 F.3d at 1297. Creditors are entitled to written records regarding disbursements, not just oral testimony. See In re Juzwiak, 89 F.3d 424, 429 (7th Cir. 1996).

Denial of discharge under Section 727(a)(3) is appropriate where the debtor fails to maintain and keep written documentation of the disposition of loan proceeds, regardless of if said loans were "informal" or extended to the debtor by family or friends. See Nevett 2021 WL 2769799 at *1; In re Racer, 580 B.R. 45, 52 (Bankr. E.D.N.Y. 2018) (rejecting the debtor's only justification for his lack of records was because the loans were informal loans from family members that were incurred five to six years pre-filing). Kane admits that he has failed to maintain and preserve adequate books and records to document his receipt and use of the funds received from the Individual Lender Loans, totaling $2,150,000. In fact, Kane has admitted that there are no such documents documenting the Individual Lender Loans or his disposition of the borrowed funds. Kane's conflicting testimony at his Meeting of Creditors and Rule 2004 Examination is that the Individual Lender Loans were to be used to: pay bills, pay off unidentified people Kane had borrowed money from, pay rent, buy food, and "stay current." Such "use" is unsupported by any documentation. And Kane is unable to even identify who the other "people" are that he had to pay off.

Similarly, denial of discharge under Section 727(a)(3) is appropriate where the debtor fails

5

to maintain and keep written documentation regarding his disposition of various loan proceeds. See Caneva, 550 F.3d at 764; Nevett, 2021 WL 2769799, at *9; Racer, 580 B.R. at 52. Kane does not dispute receiving over $8,000,000 in net loan proceeds from the various loans he incurred from private lenders in the five years leading up to the Petition Date. Kane further admits that he has failed to maintain and preserve adequate books and records to document his receipt and use of these funds and has no recollection as to what he ultimately did with such a substantial sum of money – all while earning a sizeable income as a professional ice hockey player.

Moreover, denial of discharge under Section 727(a)(3) is appropriate where the debtor fails to maintain and keep written documentation of gambling losses. See United States Tr. v. Macway (In re Macway), No. 14-146680, 2016 WL 4039745 (9th Cir. July 28, 2016); In re Chen, BAP No. WW-17-1067-KuFB, 2017 WL 4768104, at *9 (9th Cir. BAP 2017); United States Tr. v. Hong Minh Tran (In re Hong Minh Tran), 464 B.R. 885 (Bankr. S.D. Cal. 2012). In the instant case, Kane has disclosed $1,500,000 in certain losses attributable to "[g]ambling at casino and via bookie (sports betting)." Despite this, Kane has admitted that he does not maintain a document or tally of his winnings or losses associated with his gambling and cannot identify any of the "online bookies" that he used.

Besides all the foregoing, Kane should be denied a discharge under Section 727(a)(3) because he has admittedly failed to keep adequate bank statements and credit card statements for his various checking, savings, and credit card accounts for the years leading up to his bankruptcy filing. See The Cadle Co. v. Terrell, 2002 WL 22075, at *5 (N.D. Tex. Jan. 7, 2022), aff'd, 46 Fed. Appx. 731, 2002 WL 1973217 (5th Cir. July 30, 2002) ("While bank statements and credit card receipts or monthly statements may be simple records, they 'form the core' of what [is necessary] to ascertain [the Debtors] financial condition, primarily his use of cash assets."); In re Mann, 2014 WL 2523451, at *6 (Bankr. D.S.C. June 4, 2014). Kane has admitted to failing to maintain records

6

and documentation for a number of his identified accounts and has produced only a minimal of documents for the year 2020 and 2019. Kane produced no bank statements or credit card statements pre-dating 2019.

Lastly, Kane is to be denied a discharge under Section 727(a)(3) in light of the undisputed fact that he earned approximately $22,000,000 in the years immediately leading up to his bankruptcy filing as a professional ice hockey player, and yet, testified that "[he] ha[s] no idea" or would be unable to "generalize or remember" what he did with said funds. And the documentation produced by Kane does not support the dissipation of nearly $22,000,000 in gross compensation.

In this case, and as highlighted above, Centennial will show that Kane cannot provide sufficient records and documentation regarding disposition of substantial identified assets. Because of the lack of records, it is not clear whether such cash was used for Kane's personal expenses – e.g. to pay bills, credit cards, mortgages, food, rent, or stay current – or lost to gambling, all as alleged by Kane. The lack of records and documentation regarding the use and disposition of such sizable loan proceeds is even more problematic when one considers that Kane received over a million dollars in deposits from "unknown" sources and for "unknown" reasons.

Given the large sums of monies at issue, and Kane's self-described business practice of incurring "loan to pay off loan to pay off loan", it is astonishing that Kane did not keep or maintain any records regarding his disposition of these identifiable sums. Based off of Kane's own admissions, there is no dispute that Kane has failed to maintain or preserve books and records. In light of the foregoing, Kane's true financial condition cannot be determined. Thus, denial of discharge under Section 727(a)(3) is warranted.

**C.  KANE FAILED TO EXPLAIN SATISFACTORILY LOSS OF ASSETS UNDER 11 U.S.C. §727(A)(5)**

Section 727(a)(5) provides in pertinent part:

(a) The court shall grant the debtor a discharge, unless -

7

> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. §727(a)(5).

In the Ninth Circuit,

> To establish a prima facie case under § 727(a)(5), the objector to discharge must demonstrate that: (1) [the] debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date of the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statements of affairs do not reflect an adequate explanation for the disposition of the assets.

In re Hazelrigg, BAP No. WW-13-1230-TaDJu, 2013 WL 6154102, at *5 (9th Cir. BAP Nov. 19, 2013) (citing Retz v. Samson (In re Retz), 606 F.3d 1189, 1205 (9th Cir. 2010)). In addition,

> Under section 727(a)(5) after a creditor makes a prima facie showing that an asset existed, but that neither it nor its proceeds can be located, the burden shifts to the debtor to provide a satisfactory explanation for the missing asset. Comerica Bank v. Bressler (In re Bressler), 321 B.R. 412, 417 (Bankr. E.D. Mich. 2005). A debtor's failure to offer a satisfactory explanation may be sufficient ground for denial of discharge under section 727(a)(5). In re Devers, 759 F.2d 751, 754 (9th Cir. 1985).

In re Hong Minh Tran, 464 B.R. 885, 893 (Bankr. S.D. Cal. 2012). Loan proceeds and salary compensation are identifiable assets for purposes of Section 727(a)(5). [Doc. 19 at ¶13 (citing Retz, 606 F.3d at 1200).

An explanation is satisfactory when it "say[s] what actually happened to the assets and [is] believable … section 727(a)(5) does not require that the explanation itself be meritorious, or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily account for the disposition." In re Chu, 511 B.R. 681, 687 (Bankr. D. Haw. 2014) (quoting In re Bodenstein, 168 B.R. 23, 33 (Bankr. E.D.N.Y. 1994)). But where a debtor lacks reasonable records or support third party evidence, he defeats a § 727(a)(5) objection to discharge only if his story, standing alone, is satisfactory. Hong Minh Tran, 464 B.R. at 894; see also In re Hansen, 325 B.R. 746, 763 (Bankr. N.D. Ill. 2005) (noting the intertwined relationship between the documentation required by section (a)(3) and the adequacy of the explanation under section 727(a)(5)). "Vague

8

and indefinite explanations of losses based on estimates uncorroborated by documentation" will not suffice. Bell v. Stuerke (In re Stuerke), 61 B.R. 623, 626 (9th Cir. BAP 1986) (citing In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984); see also In re Racer, 580 B.R. 45, 55 (Bankr. E.D.N.Y. 2018) ("Courts have noted that 'explanations of such generalized, vague, indefinite nature such as assets being spent on 'living expenses,' unsupported by documentation, are unsatisfactory."). Thus, typically, the debtor's explanation must contain specifics and details which will usually require some support from records. See, In re Dolin, 799 F.2d 251 (6th Cir. 1986); see also In re Yanni, 354 B.R. 708, 716 (Bankr. E.D.Pa. 2006) (quoting Sonders v. Mezvinsky (In re Mezvinsky), 265 B.R. 681, 690-91 (Bankr. E.D.Pa. 2001) ("A debtor facing an objection to discharge under § 727(a)(5) may very well have to gather or produce documents and records which she might otherwise not ordinarily keep and in fact may be justified for failing to keep under § 727(a)(3). She may well have to hire professionals to locate her assets if she is unable to do so herself.")). Like Section 727(a)(3), intent to defraud is not required. In re Carter, 236 B.R. 173, 180 (Bankr. E.D. Pa. 1999).

Centennial has established that during five to six years leading to Kane's filing of the Petition, he was the direct recipient of over $10,000,000 in net loan proceeds stemming from the Prior Private Lender Loans and Individual Lender Loans. Additionally, the evidence confirms that Kane received no less than $22,000,000 in gross wages from 2018 through 2020 in connection with his employment as a professional ice hockey player. And the undisputed facts as to Kane's receipt of nearly $32,000,000 is that it is no longer in his possession. Kane has failed to satisfactorily explain the loss of assets to meet his liabilities. Given the amount of assets he has disposed of in the five years before his bankruptcy filing – an amount that exceeds Kane's total liabilities – the failure to account for any of this is not justified. Kane can only offer the vaguest and indefinite explanation. The lack of explanation and ability to recall what Kane used the money for is only compounded by the lack of books and records that would corroborate his stories. Accordingly, Kane

is not entitled to discharge pursuant to Section 727(a)(5). In re Long, 2:19-ap-01086-ER, 2020 WL 8184203 (Bankr. C.D. Cal. Nov. 30, 2020) (denying discharge under Section 727(a)(5) where the debtor had failed to explain her loss of assets by failing to provide documents to fully explain what happened to the entirety of the "Borrowed Funds" totaling $112,500 and the debtor admitted that she "cannot explain the loss").

### D. COURTS HAVE HELD REASONABLE LOOK-BACK PERIOD CAN BE MORE THAN TWO YEARS

Under either Section 727(a)(3) or Section 727(a)(5), the court's inquiry is not limited to any specific time period pre-petition. Racer, 580 B.R. 45, 55 (Bankr. E.D.N.Y. 2018). The same non-exclusive factors that inform the court's decision was to whether a debtor was justified in keeping and preserving adequate documents and records, see Tan, 2007 WL 7541007, at *12 and Cox 47 F.3d at 1299, also "inform the court's decision regarding how far back it is reasonable to expect a debtor to keep records regarding his financial transactions." Nevett, 2021 WL 2769799, at *10 (citing Sfadia v. Dongkuk Int'l, Inc. (In re Sfadia), BAP No. CC-06-1176-MaBPa, 2007 WL 7540987, at *11 (9th Cir. BAP Sept. 5, 2007) ("Debtors are required to keep records for a 'reasonable' period of time for § 727(a)(3) purposes, and a court's determination of 'reasonableness' depends on the particular facts and circumstances of each case."). The existence of "lost assets of substantial value relative to debtors' liabilities" often warrants the extension of such two-year period. In re Stiff, 512 B.R. 893 (Bankr. E.D. Ky. 2014).

In Nevett, the Ninth BAP affirmed the bankruptcy court's summary judgment order in favor of the United States Trustee denying the debtor a discharge under Section 727(a)(3) involving $1,500,000 of loan proceeds received six years pre-petition. 2021 WL 2769799, at *10; See also Blackwell Oil Co. v. Potts (In re Potts), 501 B.R. 711 (Bankr. D. Colo. 2013) (denying debtor's discharge in a case involving $1,400,000 million of unaccounted-for funds and assets in debtor's business four to seven years before petition); In re Hermanson, 273 B.R. 538, 551-52 (Bankr. N.D.

10

Ill. 2002) (denying debtor's discharge for failure to account for approximately $1,300,000 million loan proceeds obtained six years before bankruptcy); <u>Racer</u>, 580 B.R. 52-53 (denying debtor's discharge for failure to account for approximately $1,500,000 in informal loans from family members that were incurred five to six years pre-petition).

It is not unreasonable to expect Kane to have kept records and documentation of his financial condition for the five to six years pre-dating his bankruptcy filing considering the substantial value of the assets in question.

E.     **KANE, WITH THE REQUISITE INTENT, PROVIDED FALSE TESTIMONY UNDER OATH**

Section 727(a)(4)(A) provides in pertinent part

(a) The court shall grant the debtor a discharge, unless -

> (4)(A) the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account….

11 U.S.C. §727(a)(4)(A).

To deny a debtor a discharge under Section 727(a)(4)(A), the plaintiff must show that (1) the debtor knowingly and fraudulently made a false oath; and (2) the false oath related to a material fact. <u>In re Wills</u>, 243 B.R. 58, 62 (9th Cir. BAP 1999). A false oath may involve a false statement or omission in the debtor's schedules. <u>Id.</u> (citing <u>In re Beaubouef</u>, 966 F.2d 174, 178 (5th Cir. 1992)). Further, a false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. <u>Chalik</u>, 748 F.2d 616, 618 (11th Cir. 1984).

As this Court is aware, the "means test" was instituted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23. The test seeks to ensure that debtors who can afford to repay at least a portion of what they owe their creditors do not abuse the bankruptcy process by filing under chapter 7. However, a known loophole to the "means test" is that it only applies to those debtor's who classify their debts as primarily non consumer debt – or in

11

Kane's case, as primarily business debts. But Kane testimony confirms that Kane's debts are not "business debts," nor are they non-consumer debts. Instead, all of the loan funds were incurred by Kane to pay of pre-existing personal debt, associated with his personal expenses, mortgages, rent, and food. Or otherwise, were primarily for a family, personal, or household purpose. This was confirmed by Kane's prior attorney, John Firero, who informed Centennial's prior counsel, Barry Smith, that Kane's debts were consumer debts.

In the Ninth Circuit, intent usually must be proven by circumstantial evidence or inferences drawn from the debtor's course of conduct. In re Khalil, 379 B.R. 163, 174 (9th Cir. BAP 2007).

> The essential point is that there must be something about the adduced facts and circumstances that suggest that the debtor intended to defraud creditors or the estate. For instance, multiple omissions or material assets or information may well support an inference of fraud if that nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size and nature, a debtor might want to conceal.

Id. at 175. As the Khalil court found:

> The existence of more than one falsehood, together with a debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions, such as when filing amended schedules, **can** be found to constitute a basis for a finding of **intent to deceive**. In other words, a court need not find that there is any actual admission by a debtor of any intent to deceive, but rather in looking at all circumstances, whether or not such intent may be inferred.

Id. (emphasis in original). While, "[g]enerally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts", Retz, 606 F.3d at 1199 (quoting First Beverly Bank v. Adeeb (In re Adeeb, 787 F.2d 1339, 1343 (9th Cir. 1986)), "the debtor's reliance must be in good faith." Id. "The advice of counsel is not a defense when the erroneous information should have been evident to the debtor." Id. (citing Boroff v. Tully (In re Tully), 818 F.2d 106, 111 (1st Cir. 1987)). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." Id.

12

# CONCLUSION

Kane is not entitled to a discharge pursuant to Section 727(a)(3) because by his own admission he failed to keep and preserve any records concerning his receipt and disposition of the Individual Lender Loans, his receipt and use of the Prior Private Lender Loans, and bank account and credit card statements for all of his various accounts predating 2019 and the majority of his accounts predating 2020. Likewise, Kane is not entitled to a discharge under Section 727(a)(5) because he has failed to provide a satisfactory explanation for the loss of the funds and assets and has instead only offered vague and unsubstantiated stories.

In addition, through oral testimony at his Meeting of Creditors, Rule 2004 Examination, and Deposition, Kane has admitted that the filed Petition and Schedules are not true. False oaths are complete once made. Further, the case law is clear that materiality is not determined by a financial impact to the estate; the question is whether the administration of the estate was altered. Here, the administration changed as a result of Kane's false oaths. Therefore, Kane is not entitled to a discharge pursuant to Section 727(a)(4).

WHEREFORE, Centennial respectfully requests that this Court find in favor of Centennial and against Kane and that judgment is entered as follows:

A. That Kane's discharge be denied pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4), and (a)(5); and

B. For such other and further relief as this Court deems just and proper.

DATED: January 17, 2023          ANTHONY & PARTNERS, LLC

By:    */s/ Andrew J. Ghekas*
Andrew J. Ghekas
Attorneys for Plaintiff
CENTENNIAL BANK

DATED: January 17, 2023					NIESAR & VESTAL LLP


							By:	*/s/ Peter C. Califano*
								Peter C. Califano
								Attorneys for Plaintiff
								CENTENNIAL BANK